MARTIN VS. CARLIN.

Where there is a mistake in the government survey of a fractional lot, so that either the line of a meandered stream or a quarter-section line (both of which are called for by the survey as constituting the boundary between two fractions) must be abandoned, the quarter-section line should be adhered to as the more certain call.

APPEAL from the Circuit Court for *Jefferson* County.

*E. Hurlbut*, for appellant.

*D. W. Small*, for respondent.

*By the Court*, COLE, J. This action was brought to recover 19 and 82-100 acres of land admitted to be in possession of the defendant below, who is the appellant. The land is claimed as being a part of lot No. one in section twenty-three in township eight, range sixteen, in Jefferson county. The section was included in the grant which was made by the general government to the territory for the purpose of aiding in the construction of the Rock River Canal. It is a fractional section, made so by the Rock river, which flows through it from the north-east to the south-west. The entire section, with the exception of three forties in the north-west quarter, is divided into fractional lots, which are numbered from one to nine. According to the original plat and survey of the section, lot one was bounded on the north and east by the section line, on the south by the east and west quarter-section line, and on the west by Rock river. By the same plat and survey, lot two was bounded on the east by the section line, on the north by the east and west quarter line and the river, and on the west by the river likewise. The southern boundary of this lot is immaterial to this controversy. It appears that there was a mistake in the original survey and meandering of Rock river, and that it is further north and west than the government survey had located it on the north-east fractional quarter, so that there is more land in that fractional quarter

than the government survey calls for.   The plaintiff derives title to lot one from John S. Rockwell, who purchased it, with other lands, of the territory in 1848.   In the patent the lands conveyed to him are described as "the south-west quarter of the north-west quarter, and *fractions one* and nine in section twenty-three of township eight, range sixteen, containing one hundred and thirty-two and 17–100 acres according to the *official plat* of the survey of the said lands returned to the general land office of the United States by the surveyor-general." The defendant, along with other evidence, offered a patent from the territory of Wisconsin to Harvey Burchard, dated the 4th of November, 1846, for lots two and three in section twenty-three, township eight, range sixteen, containing ninety-seven and 40–100 acres according to the official plat of the survey of the United States, with the obvious purpose of proving title to lot two as derived from Burchard; but this piece of evidence was objected to and ruled out, on the ground that it was irrelevant and immaterial.   It was an admitted fact in the case that the government meandered line and survey of Rock river was incorrect; that according to a correct survey, the bed of that river was further north and west than the government survey had located it, so as to leave a strip of land in the north-east fractional quarter south of that river and north of the east and west quarter-section line; and the whole controversy turns upon the point whether this strip belongs to lot one or lot two.   The plaintiff insists that the defendant cannot legally claim any land north of the quarter line as a part of lot two, because, by the system of government surveys, that line is the true boundary between lot one on the north and lot two on the south; and that lot one must be held to embrace all the land in that fractional quarter section, north of the quarter line and south of the river.   The defendant insists that no such controlling effect should be given to the quarter-section line in determining the boundary of lot two; that the meandered lines of Rock river

run by the government survey must be regarded as well; and, since it appears that by the government plat and survey lot two extended on the north to Rock river, this natural object more certainly designates the northern boundary of the lot, and other calls and lines must be subordinate to it. Besides, lot two will fall short just about the amount of land in dispute, unless it extends across the quarter-section line to the river on the north, while lot one will overrun that amount. And the only question in the case which we deem worthy of any particular notice, or which has given us any difficulty, is, whether the quarter-section line must not be considered as the boundary of lot two on the north, disregarding the delineation of Rock river on the government plat and survey, or whether this line must yield to this natural object as located on that plat? The question is one, certainly, not free from difficulty; but a majority of the court are inclined to the opinion that, under the system of government surveys, the quarter-section line must control and fix the boundary of lot two on the north. In announcing this result we are not unmindful of the rule in surveys, that the law loves certainty in calls, and that a call for a natural object, such as a river, will control courses, distances and quantity. But this rule, when applied to the admitted facts of this case, supports rather than militates against the view we have taken. For, by the system adopted by the government for the surveys of the public lands, they are first surveyed into townships six miles square, the lines of which are required to correspond with the cardinal points. At the corners of the townships appropriate monuments are required to be erected. These townships are subsequently subdivided into thirty-six sections by running parallel lines each way; and at the corners where these lines intersect, monuments are erected, and also intermediate monuments equidistant between the section corners. Brightly's Dig. Laws U. S., pp. 446–7, 479, 481; Lester's Land Laws and Decisions, p. 722. The external lines of the sections are actually

run, and the section and quarter-posts or monuments are actually fixed and established. Adopting, then, the language of the court, as used in *McClintock v. Rogers*, 11 Ill., 279, 296, we say : "The original monuments, when ascertained, afford the most satisfactory and we may say conclusive evidence of the lines originally run, which are the true boundaries of the tract surveyed, whether they correspond with the plat and field notes of the survey or not. All agree that courses, distances and quantities must always yield to the monuments and marks erected and adopted by the original surveyor, as indicating the lines run by him. These monuments are facts; the field notes and plats indicating courses, distances and quantities, are but descriptions, which serve to assist in ascertaining those facts. Established monuments and marked trees not only serve to show with certainty the lines of their own tracts, but they are also resorted to, in connection with the field notes and other evidence, to fix the original location of a monument or line which has been lost, or obliterated by time, accident or design." The section and quarter posts on section twenty-three are readily ascertained. There is no difficulty whatever in running the east and west quarter line where the law requires it to be run. If the section were not a fractional one, and had been subdivided into quarter and quarter-quarter sections, this line would be recurred to as the true division line between the north and south half of the section. Why should we not resort to these established monuments to ascertain the division line between lots one and two in this case? The answer is, because on the plat Rock river is delineated as the boundary of lot two on the north. But it is admitted that the original survey or meandering of Rock river is erroneous. The meandered lines can only be run from the field notes of the original survey, and when traced according to those notes they do not mark the present location of the river. But because Rock river was designated or marked on the official plat as bounding lot two on the north, it is claimed that it

must be taken as the true boundary, disregarding the east and west quarter line and the quarter posts actually established and found. Suppose the line between lots one and two were a section or township line, and there had been the same mistake in locating Rock river on the plat? Should those lines also be disregarded in determining the northern boundary of lot two? Could you override the established monuments and lines actually run, which control in all cases of disputed boundaries, to reach a natural object? If such a rule were adopted, it is easy to perceive that it would result in the greatest confusion and disorder. We see no sound reason for saying that the case supposed is distinguishable from the one before us. For if the quarter-section line is to be crossed to reach a natural object, why not a township or section line? What well grounded distinction exists between them? They are all lines actually run by the surveyor, or which may be run from ascertained monuments established by him. And there is as much reason for saying that the lot crosses the town line and extends to some natural object, as that it should cross the quarter-section line for a like purpose. The majority therefore think that where the lines of the survey can be run from well ascertained and established monuments, they are to control and govern a description delineated on a plat. To adopt any other rule would annul the authority of the public surveys and open the door to litigation and difficulty. And as lot one embraces the land in controversy, the judgment must be affirmed.

The defendant did not offer to show that he had been in possession under a claim of title for twenty years, so as to bring him within the protection of the statute.

For these reasons the judgment must be affirmed.

Justice DOWNER dissents in this case.