## SHUFELDT VS. SPAULDING and others.

DEED.   *Construction of deed referring to plat.*

1. It is well settled that when a plat is referred to in a deed as a part of
   the description of the land conveyed, such plat becomes an *essential
   part of the description;* and that courses, distances, quantities and
   measurements are controlled by natural or fixed land-marks.
2. The United States conveyed to the territory of Wisconsin "fractional
   section 29" in a certain town; and on the government plat of the
   land (to which the description in the deed refers), said fractional sec-
   tion, along its whole west line, abuts upon a meandered lake (which

Shufeldt vs. Spaulding and others.

extends west beyond what would be the western line of the section if it were a full one); and the whole fraction (as represented upon the plat) is within what would be the *east half* of the section, if a full one. Said fractional section is divided on said plat into three lots, of which Nos. 1 and 2 include the portion north of the east and west quarter line of the section, and No. 3 the portion south of it. The territory sold and conveyed to D. C. the " northeast fractional quarter of sec. 29," in said town, *according to the above described government plat. Held*, that D. C. had a right to believe that the lake was his western boundary throughout the whole length of that boundary; that the territory clearly intended to convey all the land it owned in said fractional section north of the east and west quarter line; and that the deed is sufficient to carry out that intention.

3. *Held*, therefore, that a subsequent deed executed by the school land commissioners, purporting to convey to one F. a neck of land not covered by the water of the lake, containing about seven acres, north of the east and west quarter line of the section, and *all of it more than forty* chains west of the east line of the section, is void; such land being covered by the deed of the territory to D. C.

APPEAL from the Circuit Court for *Jefferson* County.

Pursuant to an act of congress, entitled " an act to grant a quantity of land to the territory of Wisconsin for the purpose of aiding in opening a canal to connect the waters of lake Michigan with those of Rock river," approved June 18, 1838, the United States conveyed to such territory certain lands, one parcel of which is described as follows: " Fractional section 29, town 8. range 17 east, 162 95-100 acres." This description has reference to the official government survey and plat of the lands thus conveyed. An examination of such plat will show that fractional section 29, along its entire west line, abuts upon a meandered body of water (now known as La Belle lake), which extends west beyond what would be the west line of section 29, were it a full section. The meander line of the lake runs from northwest to southeast, the north line of the fractional section being 36 1-2 chains, and the south line thereof one chain, in length. Hence the whole fraction is within what would have been the east half of the section, were it a full one. The fractional section is divided into three lots. Lots 1 and 2

include the portion north of the east and west quarter lines, and lot 3 the portion south of it. These lots contain respectively 67.40, 52 and 43.55 acres; in all, 162.95 acres, being the quantity specified in the grant to the territory.

In 1846, the territory of Wisconsin sold and conveyed to one Daniel Cottrell " the northeast fractional quarter of section 29, town 8, range 17, according to the official plat of the survey of said lands returned to the general land office of the United States by the surveyor general." The defendants are the owners of the land thus conveyed to Cottrell, through mesne conveyances from him ; and for many years, they, and those under whom they claim, have occupied all the land in fractional section 29 which lies north of the east and west quarter line thereof, supposing that it was all included in the conveyance to Cottrell, their grantor.

In 1869, one Joseph Fowler procured to be made a survey and plat of " land projecting into La Belle lake, in section 29 of town 8 north, of range 17 east, in the state of Wisconsin." The plat purports to have been made by the deputy county surveyor, and is verified by his certificate dated February 16, 1869. It shows that there is a neck of land, not covered by the waters of the lake, extending west of a line drawn parallel to, and forty chains west of, the east line of the section, about seven acres of which lies north of the east and west quarter-section line. In some unexplained manner, this plat found its way to the office of the commissioners of school and university lands. Two days after the date of the surveyor's certificate, the commissioners sold this seven-acre tract to Fowler, and subsequently issued to him a patent therefor. Fowler afterwards executed a deed of the same tract to the plaintiff, who brought this action to recover the same of the defendants.

The foregoing facts appear from the evidence given on the trial. The circuit judge instructed the jury that the plaintiff was entitled to recovor ; and a verdict for the plaintiff was ac-

cordingly returned. The defendants appealed from a judgment against them entered pursuant to the verdict.

*Vilas & Bryant*, for appellant, argued, *inter alia*, 1. That lands granted by description according to government survey, are to be ascertained by the field notes and landmarks fixed by such survey, and such description necessarily incorporates with the deed, by way of reference, so much of the field notes and maps of the government survey as relate to that land. More especially, when a plat or map is referred to in a deed as part of the description, it becomes, for all purposes of identification of the land conveyed, a part of the deed, and controlling so far as it indicates boundaries. *Varick v. Smith*, 9 Paige, 547; *Glover v. Shields*, 32 Barb., 374; *Thomas v. Patten*, 1 Shep., 329; *Lunt v. Holland*, 14 Mass., 149; 15 Cal., 304; 24 id., 435; 29 Me., 169; 1 Greenl., 219; 11 Ill., 98. It is also a settled principle in the construction of grants, that courses, distances, quantities, all measurements, must yield to fixed natural landmarks; and wherever a boundary is rested, in a grant, upon visible natural objects, as a river or lake, the grant extends to such boundary, although the survey calls of distance be short. *Wright v. Day*, 33 Wis., 260, 264; *Newsom v. Pryor's Lessee*, 7 Wheat., 7, 10; *Brown v. Huger*, 21 How., 305, 318; *Jackson v. Camp*, 1 Cow., 605; *Doe v. Thompson*, 5 id., 371; 6 id., 705; 6 Robert., 431; 46 Barb., 518; 47 id., 311; 45 Me., 9; 42 id., 209; 30 id., 47. This applies to grants made by the state. *Lunt v. Holland, supra.* The grant to Cottrell must be held, therefore, to have extended to the lake. 2. The acts of congress are in accordance with these views. It is declared that boundary lines of sections or subdivisions, "actually run and marked," in the surveys returned by the surveyor general, "shall be established as the proper boundary lines" of the same; "and the length of such lines as returned * * shall be held and considered as the true length thereof." 1 Brightley's Dig., 466, pl. 41. So it has been held by the federal

supreme court, and by this court, that meander lines serve the purpose of defining the sinuosities of the bank, and of enabling computation of the superficial contents of a subdivision, and do not constitute the boundary in fact; but that the water's edge, or the *medium filum*, if on a navigable stream, is the true boundary. *Railroad Co. v. Schurmeir*, 7 Wall., 272; *Wis. R. Imp. Co. v. Lyons*, 30 Wis., 61; *Arimond v. G. B. & M. C. Co.*, 31 id., 316; *Wright v. Day, supra*.

*George F. Westover*, for respondent:

The state conveyed to Cottrell the northeast fractional quarter of section 29, *according to the government survey*. These last words are not words of description, but of identification only. They are not intended, when inserted in a grant of a fractional division, to limit the land conveyed to exactly the shape and quantity of land represented upon the plat of survey to be within such fractional division. If those words were words of limitation and description, then the state received title to only 119 acres. It appears that the quarter section conveyed to Cottrell contains nearly 160 acres of land. Defendants own this, because they are not limited to the quantity of land which appears to be in that quarter section, " according to the government survey," but are entitled to all the land actually found within the lines of description in their grant, *i. e.*, within the lines bounding the northeast quarter section. The same reasoning would prevent them from crossing those lines of description, and holding lands not included within the terms of their grant. Before issuing a patent for any part of section 29, the state owned the whole thereof. After issuing a patent to Cottrell for the northeast quarter section, it still owned all the land in that section not so conveyed. That it still *claimed* to own the balance of the section appears from the fact of its subsequently issuing a patent to Fowler of the lands in the northwest quarter section. But it is said that defendants must own to the lake, because the government plat shows their land to be bounded on the west by a lake. That is, the survey,

though erroneous, is binding in their favor, and compels their land to be bounded by the lake; yet it is not binding against them, but they may disregard it to extend their land to the place where the lake really is. Again, suppose the lake had been still further west, and wholly in the section adjoining section 29 on the west; would the lands of defendants extend to it ? If a quarter line is to be crossed to reach a natural object, why not a township or section line? *Martin v. Carlin*, 19 Wis., 454. 2. There is no conflict or ambiguity of description in the grants under which the parties respectively claim. Plaintiff can have the land described in his grantor's patent, and defendants that described in their grantor's patent; each to the full measure of the description in their respective patents. 3. But it is said that the quarter line was never run, while the meandered line was run. (1) Defendants cannot claim by the meandered line, for that would exclude them not only from the land here in question, but from a large portion of that in the northeast quarter section. (2) The quarter line can be found, and, as appears by the plat in evidence, has been found. "When the lines of the survey can be run from well ascertained and established monuments, they are to control and govern a description delineated on a plat." *Martin v. Carlin*, *supra*. "When the township and section lines are run, and the corners are marked according to law, the quarter-section lines are ascertained on the plat by protracting lines across the section north and south, and east and west, equidistant from the section lines; and so of other subdivisions. And a surveyor, going on the land to ascertain the boundary of a quarter or half-quarter section, would do it with as much ease and certainty as if it had been delineated on the plat by the surveyor general. Extending the subdividing lines on the township plats is not, therefore, essentially necessary to enable the register to sell the land, or to give title to the purchaser." *Brown's Lessee v. Clements*, 3 How. (U. S.), 650.

LYON, J.   Were authorities necessary to sustain principles which, if not elementary, are yet well settled in the law, the numerous cases cited by counsel for the defendants abundantly show that when a plat is referred to in a deed as a part of the description of the lands conveyed, such plat becomes an essential part of the description itself, and that courses, distances, quantities and measurements must yield to, and are controlled by, natural or fixed landmarks.

The conveyance by the territory of Wisconsin to Daniel Cottrell (through which the defendants claim title to the land in controversy) was of the northeast fractional quarter of section 29, *according to the official government plat.*   All of the land in the north half of the fractional section is, by the government plat, located in the northeast quarter thereof.   Cottrell, buying the land with reference to the plat, had the right to believe that the lake was his western boundary throughout the entire length of that boundary,   The territory, selling by the plat, clearly intended to convey all the land it owned on the fractional section, lying north of the east and west quarter line.   We have no difficulty in holding that the deed to Cottrell fully carried out the understanding and intention of the parties.   We think it quite immaterial that the land in controversy lies more than forty chains west of the east line of the section.   The designation in the deed of the northeast fractional quarter must yield, if necessary, to the clear intention of the parties expressed in the deed to include therein all of the fractional section lying north of the east and west quarter line thereof.

The case of *Martin v. Carlin*, 19 Wis., 454, which is much relied on by the learned counsel for the plaintiff, is not in conflict with the views above expressed.   It rather sustains them. Without stopping to comment on the language of the opinion, it is sufficient to say, that in that case the controversy was concerning the division line between fractional lots *one* and *two* in a given section.   By the government survey they were sepa-

rated by a quarter-section line. The plat showed that lot one had for its western boundary Rock river, and lot two had the same river for its western and part of its northern boundary. It is apparent that Rock river was laid down on the plat as running from the north, along the whole westerly line of lot one to the quarter-section line between the lots, thence west on that line for a certain distance, and thence southerly along the whole westerly boundary of lot two. It turned out that the plat was wrong; that the river turned west before it reached the quarter section line. The plaintiff owned lot one, and the defendant owned lot two. Because the plat bounded lot two on the north in part on the river, the defendant claimed that such lot extended across the quarter line to the river at the point where the river turned west. But the court held that the quarter line was a fixed and determined boundary between the lots, and must control.

It will readily be perceived that had the claim of the defendant prevailed, the plaintiff would have been excluded from the river along a portion of the west line of lot one. On the other hand, the claim of the plaintiff prevailing, that lot one extended south to the quarter section line until that line intersected the river, the defendant was excluded from the river as a part of the north boundary of his lot. It being impossible, therefore, so to adjust the division line as to fulfill all the conditions of the plat, the court established such line where it was located on the plat, that is, on the quarter-section line. The court recognized the binding force of the plat, and gave effect to it so far as it was possible to do so.

Entertaining these views, it becomes unnecessary to consider other questions discussed by counsel. We conclude that the patent to the grantor of the plaintiff from the state conveyed no title to the land in controversy, and that the verdict and judgment should have been for the defendants.

*By the Court.* — Judgment reversed, and new trial awarded.