CHANDOS, Administrator, Respondent, vs. MACK and an-other, Appellants.

77	573<br>s10 LRA 207n<br>29 LRA 52n

*September 27 — October 14, 1890.*

*Public lands: Grants: Unsurveyed island.*

A grant from the government, without reservation, of lands on the bank of a navigable river, vests in the purchaser the title to any unsurveyed islands lying between the main land and the center of the stream.

APPEAL from the Circuit Court for *Wood* County.

Ejectment. The answer admits that the defendants are in possession of the land, but denies that the plaintiff has any title or interest therein or any right to the possession thereof, and alleges that the same is a part of the public domain of the United States. The case was tried by the court, a jury having been waived. The facts will sufficiently appear from the opinion. The defendants appeal from a judgment in favor of the plaintiff.

For the appellants there were briefs by *Silverthorn, Hurley, Ryan & Jones,* and oral argument by *G. D. Jones.* They contended, *inter alia,* that it is settled by the laws of the United States that proprietors of lands bordering on rivers navigable in fact, *under title derived from the United States,* hold title only to the stream, and this without regard to the decisions of the courts of the several states as to the ownership of the shores and beds of such streams. *The Daniel Ball,* 10 Wall. 557; *Railroad Co. v. Schurmeir,* 7 id. 272; *Yates v. Milwaukee,* 10 id. 497; *St. Clair Co. v. Lovingston,* 23 id. 46; *Barney v. Keokuk,* 94 U. S. 324. The rule in this state which gives the riparian proprietors the shores and beds of navigable streams, is not at variance with the decision in *Railroad Co. v. Schurmeir,* but merely gives them the rights which, under the decision in *Pollard v. Hagan,* 3 How. 212, properly belonged to the state and

not to the United States. *Barney v. Keokuk*, 94 U. S. 324; *Olson v. Merrill*, 42 Wis. 211–212. But the decision in *Pollard v. Hagan*, declaring the title to the shores and beds of navigable streams to be in the states respectively, did not yield to the states the title to the islands in navigable streams. And clearly the center or thread of the stream, which under the laws of this state bounds the interest of the plaintiff, is the center or thread of that channel which separates the island from her lots 3 and 4. This is the "*watercourse*" which, under *Railroad Co. v. Schurmeir*, should be taken as the "*boundary*" of the lands conveyed by the United States; and it was error to ignore the existence of this channel, so plainly marked and indicated on the original government plat. See, besides cases above cited, *Benson v. Morrow*, 61 Mo. 345; *McManus v. Carmichael*, 3 Iowa, 1; *Middleton v. Pritchard*, 4 Ill. 510; Gould, Waters, secs. 68, 69, 77; *Watson v. Peters*, 26 Mich. 508; *Shoemaker v. Hatch*, 13 Nev. 261; *Schurmeier v. St. P. & P. R. Co.* 10 Minn. 82; *St. Paul, S. & T. F. R. Co. v. F. D., St. P. & P. R. Co.* 26 id. 31; *Indiana v. Milk*, 11 Fed. Rep. 389.

For the respondent there was a brief by *Gardner & Gaynor*, and oral argument by *Geo. R. Gardner*.

COLE, C. J. There is no dispute about the facts in this case, but the counsel disagree as to the law arising upon those facts. The action is ejectment, brought by the plaintiff's intestate, who claimed to be the owner, as riparian proprietor, of an island in the Wisconsin river, a navigable stream. She held and owned under various mesne conveyances the title derived from the general government of lot 4 in section 8 and lot 3 in section 17, township 22, range 6 east, which lots lie on the main west bank of the river, opposite to the island in controversy. She claimed that she was entitled to the possession of this island by virtue of the grant of the general government of lots 3 and 4

to those under whom she derived title, except as to certain rights which the defendants have under a deed that is mentioned in the evidence, but which does not affect any question in issue here.

The island lies near the west bank of the river, as we have said, opposite lots 3 and 4; is west of the main channel and west of the thread of the stream, and also west of the main navigable portion thereof. It is separated from the west bank of the river by a narrow channel or slough, which varies in width from 95 to 100 feet, and is separated from the east bank of the river by a channel which varies in width from 320 to 700 feet. The channel between the island and the west bank of the river has not been used since the settlement of the country for purposes of navigation, except to run out lumber manufactured at the mills on the main land on the west bank. The portion of the river used for the purpose of navigation is the main channel east of the island. The island is about 1,250 feet in length, and varies in width from 70 to 300 feet; it is a rocky formation, covered with a thin, sandy soil, and was originally covered with timber, which has been removed. It lies up and down the river, nearly parallel with the thread of the stream. It is not overflowed in ordinary freshets, but is substantially submerged in extraordinary floods. The island contains between two and three acres of land. When the general government, by its agent, surveyed and platted lots 3 and 4, and the lands on either side of the river opposite the island, it made no survey or plat of the island or of any part of it; nor has the government ever surveyed and platted it, although the location of the island is marked upon the government plat of the survey of the lands opposite and adjacent thereto. The government many years since disposed of all its lands on the river opposite and adjacent to the island, and there is nothing which tends to show that the government intended to reserve the

island as a part of the public domain. The island is referred to in the field-notes of the meandered line, but it was not surveyed, though its location is marked upon a plat of surveys, so the fact of its existence was not overlooked by the agents of the government when such surveys were made.

Now, the question in the case is, To whom does the island belong? Did it pass to the purchasers of lots 3 and 4 on the bank of the river opposite to it. The island lies between these lots and the middle of the river, and there is nothing to show, as we have said, that the government intended to reserve any right or interest in the island. As there was no such reservation, the presumption is that the government did include it and·pass all title to it to the purchaser.

On the part of the plaintiff it is insisted that the title did pass to the purchaser of lots 3 and 4 on the west bank of the river. The position of the learned counsel is this: He says when the general government, by its agents, surveys a section of land lying partly in a navigable stream, which embraces islands of various sizes in such stream, subdivides the entire section into such lots and subdivisions as it sees fit, and leaves some such islands unsurveyed, and places the same in market, and disposes of all said lots and subdivisions so surveyed and platted; that then it has parted with its entire interest in the section to the purchasers, who, as riparian proprietors, take under their respective grants to the middle of the stream; that, under such circumstances, the presumption is that the government intended to make no reservation, but intended that all its title should pass by its grant, as in case of a private conveyance. It seems to us there is great force of reason, and much good sense, in this view of the law. In this state the settled rule is that a grant by an individual of land which is bounded on a navigable stream vests in the grantee the title in the bed of the river to the thread of the stream, subject to the public right

of navigation. The cases in this court where this doctrine has been laid down are numerous, but are so familiar to the profession that it is unnecessary to cite them. The precise question, however, here presented,— whether the title of an unsurveyed island between the shore and middle of the stream would pass to the purchaser,— has not been directly decided; but we see no principle of law or good reason for holding that it would not so pass. The inference certainly is very strong, when the government leaves a small island in a navigable river, lying between the shore and middle of the stream, unsurveyed, and sells all the surveyed islands and all the lands on both sides of the river, that it intends to abandon all right to such unsurveyed island and let it pass to the riparian owners of lands on the river as an incident to its grant. It seems formerly to have been the policy of the government to survey islands omitted from the general survey, and sell them, but, from a letter of the acting commissioner of the general land office, which was introduced on the trial, it appears that this practice has been abandoned because it was found disadvantageous to the public interest, and applications for such surveys are no longer entertained. This item of evidence gives additional strength to the inference as to the effect of the grant itself from the government,— that, where no right is reserved, the grant of lands on the bank of the river vests in the purchaser the title of any unsurveyed islands lying between the main land and the center of the stream, since the government no longer desires to assert any interest to an island thus situated and omitted in the original survey.

"In the case of *Middleton v. Pritchard,* 4 Ill. 510, the supreme court of Illinois held that, when a government grant is made which does not reserve a right or interest that would ordinarily pass by the rules of law, and the government does no act which indicates an intention to make such res-

ervation, the grant includes all that would pass by it if it were a private grant; and that, as the United States had not imposed any limitation upon its grant of the land in question, which was an island in the Mississippi river, separated from the adjoining land by a slough, the title of the riparian owners extended to the thread of the river and included the island." Gould, Waters, § 69. So, "in *Railroad Co. v. Schurmeir*, 7 Wall. 272, the question was as to the title to an island in the Mississippi river, which, at the time of the survey, was a mere sand-bar, about 90 feet wide and 160 feet long, separated from the main-land by a slough or channel 28 feet wide. The island was submerged at high water (of which no notice was taken in making the survey), and the slough was insignificant in comparison with the main river. At the time of the action, the sand-bar had been filled in and covered with valuable improvements, and the contest was between the owner of the adjoining fraction and a railroad company which claimed the bar under a new survey made by a United States surveyor, and a Congressional grant of certain odd-numbered sections. It was held that the sand-bar was included in the first survey as a part of the main-land." Gould, Waters, § 77. See same case, *Schurmeier v. St. P. & P. R. Co.* 10 Minn. 82.

It seems to us that the decision in the last case is decisive of the one before us. It is true, as observed by plaintiff's counsel, there are facts in the case at bar much stronger in favor of the plaintiff than in the *Schurmeier Case*. The general government had actually conveyed the island in controversy there, and attempted to grant it to the state of Minnesota for certain purposes, and the defendant claimed under the state. But in the case before us, there is no pretense that the government has ever surveyed or attempted to convey this island as a lot separate from the survey and conveyance of lots 3 and 4 on the adjacent main shore, or that it has ever claimed, or now claims, to be the owner of

the island, nor is there any pretense that the patent of the general government, issued on the sale of those lands, reserved any right or interest that would ordinarily pass, by the rules of law, to the patentee, or that it did any act indicating an intention to make a reservation. The quantity of land included in the island was never ascertained or attempted to be sold, and we think it ·must be deemed to have been included in lots 3 and 4, and to belong to the riparian owner of those lots.

This view renders it unnecessary to consider the question whether the plaintiff acquired any title from the state by virtue of the patents offered in evidence.

*By the Court.*— The judgment of the circuit court is affirmed.