Lyon, Appellant, vs. Fairbank and others, Respondents.

*March 21 — April 9, 1891.*

*Public lands: Fractional lot: Title under patent: Trespass.*

1. Where it clearly appears from United States government maps, surveys, field-notes and records, that a parcel of public land, sold and described in the patent as Lot 1, of a particular section, was intended to include a fractional portion of an adjoining section, the patent must be held to convey such fraction as a part of that lot.

2. Owners of land whose possession is unlawfully and wrongfully entered upon by a third party, may lawfully remove the trespasser and any structures he may have erected thereon. using such force as may be necessary for that purpose, and need not wait to bring an action at law for redress. Even though, in so doing, they commit a breach of the peace, that will not render them liable to the intruder in an action of trespass.

3. Where, in an action for trespass to land, the possession is disputed, and the defendants rely upon their legal title to justify their acts, they may put it in issue by their answer and have it tried and determined.

APPEAL from the Circuit Court for *Walworth* County.

This was an action to recover damages for a trespass upon land. The complaint charges that the defendants, on the 23d day of June, 1886, wrongfully, wilfully and maliciously intending to injure the plaintiff, did unlawfully assemble and enter upon fractional section 7, in the town of Linn,— which was then in the quiet and peaceable possession of the plaintiff and occupied by him as owner, and on which he had erected a dwelling-house and made other valuable improvements, and tear down and remove the fences, etc., and riotously and tumultuously overturn and destroy the dwelling-house, and frighten and drive off the plaintiff's workmen, to his damage, etc.

The answer, after a general denial, alleges title and possession of the premises in two of the defendants, under whom the other defendants acted, and that plaintiff unlawfully and wrongfully entered thereon and built some structures which interfered with defendants' possession and enjoyment thereof, and that defendants, without any unnecessary force, removed the same.

The premises in controversy consist of a point of land, of an area of about six acres, extending south from lot 1, of fractional section 6, in the town of Linn, into Geneva Lake,

which would have formed a fractional section 7, if any such section had been recognized by the United States land officers.

The evidence showed that lot 1, of fractional section 6, was sold by the United States land officers on February 28, 1839, to Wadsworth & Dyer, from whom by mesne conveyances the title was conveyed to the two principal defendants; and that said lot 1 was understood by the first and by all subsequent purchasers, and also by the United States land officers at the time of the sale, to include said fraction on the south (although there was evidence tending to show that the number of acres stated to be in lot 1 could not have included the area of that fraction), and that such first purchasers and those claiming under them have ever since claimed the title and exercised acts of ownership over the land.

In April, 1885, the plaintiff's grantor made application at the Menasha land office to enter fractional section 7, but his application was rejected by the land officers, for the reason that the land appeared to have been already sold to Wadsworth & Dyer. From this decision an appeal was taken to the general land office, where it was afterward affirmed, but nothing had been done on such appeal at the time of the acts complained of.

The plats of this township introduced by defendants had no section 7 marked on them, but a mere dotted line appeared where the section line would have been; and plats of other townships in this state, also introduced by them, showed that similar fractions had been sold by the United States land officers with and as parts of fractional lots on adjoining sections.

The evidence also showed that, while such appeal was pending in the general land office, the plaintiff entered upon the premises, and commenced to erect a house and some other structures, and the defendants went to the

premises early one morning, and awakened and ordered off the plaintiff's workmen sleeping in the house, saying they were about to tear the house down, and the workmen thereupon vacated the premises, taking away their own goods, and the defendants then removed the doors and windows off the premises, and turned over and partially destroyed the house, and tore up a fence and a pier.

After hearing the testimony, the court, on motion of defendants, ordered a judgment of nonsuit, from which the plaintiff appealed.

For the appellant there was a brief by *J. F. Lyon & Son*, and oral argument by *Jay F. Lyon*. They argued that there was evidence which the court should have submitted to the jury, showing that the defendants entered upon plaintiff's peaceable possession with force and a strong hand. The law will not allow a man to assert his own title by force and violence. *Barnes v. Martin*, 15 Wis. 240; *Bobb v. Bosworth*, Litt. Sel. Cas. 81; *Andre v. Johnson*, 6 Blackf. 375; *Davis v. Whitbridge*, 2 Strob. 232; 3 Black. Com. 4. Though the statute of forcible entry and detainer not only punishes the guilty party, but gives restitution of possession to the party injured, yet the latter may bring an action for damages before obtaining restitution. *Beddall v. Maitland*, 17 Ch. D. 174; *Edwick v. Hawkes*, 18 id. 199. He may elect to waive the statutory penalty, and maintain trespass *quare clausum*, and the defendant will not be permitted to set up title in himself as a defense. *Dustin v. Cowdry*, 23 Vt. 631; 8 Am. & Eng. Encycl. of Law, 126, 173, and note 4; *Reeder v. Purdy*, 41 Ill. 279; *Farwell v. Warren*, 51 id. 467; *Ill. & St. L. R. & C. Co. v. Cobb*, 68 id. 53; *Doty v. Burdick*, 83 id. 478; *Mosseler v. Dever*, 106 N. C. 494; *Larkin v. Avery*, 23 Conn. 304; *Sinclair v. Stanley*, 64 Tex. 67; *S. C.* 69 id. 718; *Iron Mountain & H. R. Co. v. Johnson*, 119 U. S. 608; *Newcombe v. Irwin*, 55 Mich. 621; *Emerson v. Sturgeon*, 59 Mo.

404; *Winterfield v. Strauss*, 24 Wis. 394; *Meese v. State*, 15 Neb. 558. If the question of title is in issue here, the defendants have failed to show title, since the United States land laws give the land officers no authority to include one fractional section of land in a lot of another section. *Lindsey v. Hawes*, 2 Black, 557; *Garland v. Wynn*, 20 How. 8; *Barnard's Heirs v. Ashley's Heirs*, 18 How. 43; Acts of Cong. May 20, 1785; May 18, 1796; May 10, 1800; March 26, 1804; February 11, 1805; April 24, 1820; and April 5, 1832; Vol. 2, Senate Land Laws, etc., 180, 220, 583, 789.

*John T. Fish* and *John B. Simmons*, for the respondents, contended, among other things, that the patent to *Wadsworth & Dyer*, by conveying lot 1, "according to the official plat, etc., returned to the general land office," makes that plat, with its notes, lines, descriptions and landmarks, essential parts of the description. This rule is established by numerous decisions in this and other states. The evidence establishes beyond question that lot 1, of section 6, in township 1 north of range 17 east, has Geneva Lake for its boundary on the south and west; and for a long series of years that has been the practical construction of the patent therefor, by the parties to the sale,— the United States government and the purchasers and their grantees. That construction should be held conclusive. Devlin on Deeds, § 851, and cases cited; *Messer v. Oestereich*, 52 Wis. 684; *Whitney v. Robinson*, 53 id. 309; *Steinbach v. Stewart*, 11 Wall. 566; *Stone v. Clark*, 1 Met. 378; *Connery v. Brooke*, 73 Pa. St. 80; *Winnepiseogee L. C. & W. Mfg. Co. v. Perley*, 46 N. H. 83. The United States surveyor-general had and exercised a reasonable discretion as to the subdivision of fractional sections, and his decision in respect thereto is *prima facie* good. *Gazzams v. Lessee of Phillips*, 20 How. 373; *Brown's Lessee v. Clements*, 3 How. 650; *Kissell v. St. Louis Public Schools*, 18 How. 19; *Haydell v. Dufresne*, 58 U. S. 23; *United States v. Hancock*, 133 id. 197; *Hunt v.*

*Rowley*, 87 Ill. 491. The title of defendants to this land has been affirmed by the secretary of the interior, the tribunal of final resort, upon the appeal of the appellant, and its decision is conclusive. *Johnson v. Towsley*, 13 Wall. 83; *French v. Fyan*, 93 U. S. 172; *Litchfield v. Richards*, 76 id. 575; *Cragin v. Powell*, 128 id. 691, and many other cases. As to the right of the defendants to remove or tear down the structures or property placed upon their land without permission, they cited 2 Waterman on Tresp. 66, 67; *Davison v. Wilson*, 11 Q. B. 890; *Burling v. Read*, 19 L. J. Q. B. 291; *Warner v. Fountain*, 28 Wis. 405; *Huebschman v. McHenry*, 29 id. 655; *Whalon v. Blackburn*, 14 id. 432; Cooley on Torts, 453; *Rae v. Sheward*, 2 Mees. & W. 424; *Crane v. Mason*, Wright (Ohio), 333; *Rollins v. Mooers*, 25 Me. 192; *Whitney v. Sweet*, 22 N. H. 10; *Clark v. Keliher*, 107 Mass. 406. This is not an action for a forcible entry, but one of trespass *quare clausum fregit*, and the plea of title has always been a good defense. Trespass will not lie against the true owner, having a present right of entry, even though his entry be forcible. This position is supported by very numerous cases. But our statute of forcible entry and detainer does not authorize an action for damages until a recovery first had upon a proper complaint, and against the person "found guilty." The entry in this case was not "forcible," within the meaning of the statute. *Ainsworth v. Barry*, 35 Wis. 136; *Carter v. Van Dorn*, 36 id. 289; *Willard v. Warren*, 17 Wend. 257; *Higgins v. State*, 7 Ind. 549; *Hoffman v. Harrington*, 22 Mich. 52; *People v. Smith*, 24 Barb. 16; *Pike v. Witt*, 104 Mass. 595; *Strong v. State*, 105 Ind. 1; *State v. Ross*, 4 Jones (N. C.), 315.

Cole, C. J. We think the nonsuit in this case was clearly right. In granting the motion the learned circuit judge made some remarks in regard to the title of the premises in controversy which express our views upon the subject

very clearly.   The judge, in substance, said that the patent originally granted to Wadsworth & Dyer conveyed the whole of this parcel of land, including the piece or point in dispute, to the patentees; that, though the patent describes the land as "lot 1, section 6," yet the map which accompanied the patent showed that lot 1 extended to Lake Geneva.   The proofs made, together with the maps, surveys, and field-notes, including the records from the general land office, conclusively establish the fact that lot 1, section 6, included the point, though, if the line between section 6 and 7 were continued, it would cut off the point. But the records themselves conclusively prove that the whole tract to the lake passed by the patent to Wadsworth & Dyer, and the ownership thereof has become vested in the defendants *Fairbank* and *Meatyard* by mesne conveyances.

There can be no doubt but this view is correct, and it is impossible, upon the evidence, to adopt any other.   All the testimony tends to show that the piece in dispute was intended to be included, and was in fact embraced, in the tract which was sold by the general government to Wadsworth & Dyer in 1839; and it would be a waste of time to attempt to make more plain a fact which is so clearly manifest from a mere inspection of the plats and public records themselves.   Consequently nothing could be more appropriate to the case than the language used by the register and receiver of the Menasha land office on the application of *Mr. Lyon* to enter this piece,— that the field-notes and records in the office show that the tract was included in lot 1, section 6, both in the survey and the sale of that lot. This fact we deem so clearly and conclusively established by all the testimony bearing upon the question that we shall assume it as a verity in the case.   *Shufeldt v. Spaulding,* 37 Wis. 662; *Whitney v. Detroit L. Co.* 78 Wis. 240.

In the answer, the defendants *Fairbank* and *Meatyard*

justify their acts on the ground that they owned and occupied the disputed piece, it being a part of lot 1; and that the plaintiff unlawfully and wrongfully entered upon the same, and tortiously placed and built some structures thereon, which interfered with their possession and enjoyment of the premises; and that the defendants, without any unnecessary force, removed such structures from their land. Now, the question is, does not this show a good justification, if the acts complained of are sustained by the proof? The defendants were the owners of the land, entitled to the possession, and, in fact, having the possession; and they find an intruder has entered upon it, and wrongfully erected a structure thereon. Have they not the right, under the circumstances, to remove the trespasser and his structure, if they could do so without a breach of the peace? The proposition seems to us too plain for argument. We cannot see how it can with reason be claimed that the owner cannot use sufficient force to remove the wrong-doer and defend his possession against a mere trespasser, providing no breach of the peace is committed. It is said, the owner should resort to his legal remedy for redress; that is to say, if a man leaves his residence with his family for a temporary period, and, on returning, finds that some intruder has entered on his grounds, erected a shanty before his door, and is living there, the position is that such owner cannot order the trespasser away, and put his shanty in the streets, with the other portable articles, using such force as may be necessary for the purpose, but must bring an action at law to oust the intruder. If there is any authority to sustain such an absurd position we certainly decline to follow it. It is said the law will not allow any one to break the peace, and redress his private wrongs by force. He may use force to defend his lawful possession, but, being dispossessed, he has no right to recover possession by force and by a breach of the peace. But if he can remove the

intruder and regain the possession without the use of such violence as amounts to a breach of the peace, can he not do so?

In the case at bar the circuit judge well observed that the first person making an unlawful entry or trespass on the land in dispute was the plaintiff himself; and it is insisted by his ingenious and able counsel that the defendants acted illegally in removing the structures which had been erected, and should have waited for the slow process of a court of law. We are unable to concur in that view. We adopt the remarks of ERLE, C. J., as employed by him in *Blades v. Higgs*, 10 C. B. (N. S.), 720, where he says: " It has been decided that the owner of land entitled to the possession may enter thereon and use force sufficient to remove a wrong-doer therefrom. In respect of land, as well as chattels, the wrong-doers have argued that they ought to be allowed to keep what they are wrongfully holding, and that the owner cannot use force to defend his property, but must bring his action, lest the peace should be endangered if force was justified." See *Newton v. Harland*, 1 Man. & G. 644, 1 Scott, N. R. 474. But in respect of land that argument has been overruled in *Harvey v. Brydges*, 14 Mees. & W. 442. PARKE, B., says: " Where a breach of the peace is committed by a freeholder, who, in order to get possession of his land, assaults a person wrongfully holding possession of it against his will, although the freeholder may be responsible to the public in the shape of an indictment for a forcible entry, he is not liable to the other party. I cannot see how it is possible to doubt that it is a perfectly good justification to say that the plaintiff was in possession of the land against the will of the defendant, who was owner, and that he entered upon it accordingly; even though in so doing a breach of the peace was committed."

These remarks of the English judges, which are in harmony with the views expressed in many cases in this

Lyon vs. Fairbank and others.

country, cited on the briefs of defendants' counsel, fully dispose of the main contention of the plaintiff. The answer was amply sustained by the proof in the case, and there was no unnecessary violence used nor breach of the peace committed in removing the structures. Everything that was done to remove these unlawful obstructions seems to have been done as quietly and peaceably as the calm summer morning on which it occurred. The defendants did not enter and take possession of their own premises with a strong hand and multitude of people, so as to cause terror or alarm to any one. If they had done so, they might have been liable on information for their criminal act, but would not be liable to the plaintiff in this action of *quare clausum.* Prof. Washburn says the law, as generally adopted in the United States, "may be assumed to be substantially as laid down by Baron PARKE. If the owner of land wrongfully held by another enter and expel the occupant, but makes use of no more force than is reasonably necessary to accomplish this end, he will not be liable to an action of trespass *quare clausum,* nor for assault and battery, nor for injury to the occupant's goods, although, in order to effect such expulsion and removal, it becomes necessary to use so much force and violence as to subject him to indictment at common law for a breach of the peace, or, under the statute, for making forcible entry." 1 Washb. Real Prop. (5th ed.) *397. The text of the learned author is fully sustained by the cases referred to in note 1.

But it is said, the question of title to real estate cannot be raised and tried in an action of trespass; but it surely is done in various ways where the right of title to property is put in issue by the pleadings. See *Warner v. Fountain,* 28 Wis. 405; *Stephenson v. Wilson,* 37 Wis. 482. Ordinarily actual possession is sufficient to sustain the action of trespass to real estate. But here, the possession being in dispute, the parties saw fit to put in issue the title to the

land.   The question of title has been fully tried, and found to be in the defendant *Fairbank*.   That is sufficient to dispose of the case.   It is not necessary to consider the law applicable to the action of forcible entry and detainer, because this is not such an action.   This, as has been said, is an action *quare clausum*, and the defendants relied upon their legal title and possession to justify their acts.   We perceive no reversible error in the case, and the judgment of the circuit court is affirmed.

*By the Court.*— Judgment affirmed.