FARRIS, Respondent, vs. BENTLEY and wife, Appellants.

*February 1—February 22, 1910.*

*Waters: Navigable rivers: Title of riparian owners: Grants from government: Unsurveyed islands: Subsequent survey and patent: Location of island: Evidence: Ejectment: Description of land: Boundaries.*

1. A grant from the United States of land bounded by a stream, with no reservation or restriction, will be given effect according to the law of the state in which the land lies.

2. A patent from the United States, without reservation, of land in this state on a navigable stream not forming the boundary line between states, vests title in the patentee to the center of the stream midway between the banks, regardless of the navigable channel, subject to the rights of the public in the stream; and he also takes title to any unsurveyed island included within such limits.

3. Such title of the patentee to an unsurveyed island cannot be divested by the United States by a subsequent survey and patent to another, in the absence of a showing that the island was left unsurveyed by fraud or mistake:

4. The map of the original government survey, showing the outline of an island near the south bank of a river, is not by itself sufficient to show that an island now located in the north half of the river was at that time in the south half.

5. The description of land in a complaint and judgment in ejectment as "Fraction Number Five in Section two, Township eight North, Range five east" (excepting a certain described parcel), "together with all the riparian rights appurtenant thereto, including all islands opposite the shore thereof and north of the thread of the river," is sufficient, since with the aid of a competent surveyor the lines can be run and the boundaries found.

6. That part of the bed of a stream to which a riparian owner has title lies between the bank and the thread of the stream, and between lines drawn from the points where his boundaries reach the bank to the thread of the stream, at right angles to the line of such thread.

APPEAL from a judgment of the circuit court for Sauk county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

Ejectment to recover possession of an island in the Wisconsin river. The plaintiff claims title by virtue of his ownership of the north bank, to wit, fractional lot 5, section 2, township 8 north, range 5 east, which he holds by virtue of mesne conveyances from the original patentee, one Danforth, whose patent was issued October 2, 1854. The defendant *Bentley* claims title by virtue of a patent from the United States issued June 29, 1908, upon a survey of the island made pursuant to government order in 1905. The Wisconsin river at this point runs nearly due west with a slight deflection to the south. The island at the time it was patented to the defendant *Bentley* and at the present time lies wholly to the north of the middle of the river, measuring from bank to bank. It is some eighteen acres in extent, and the greater part of it lies directly opposite lot 5 aforesaid. The south bank of the river opposite the island was surveyed in 1833 and 1834, and Moses M. Strong entered lots 1, 2, 3, and 4 in March, 1837, and received a patent therefor in 1841, which lots are opposite the island in controversy. The north bank was surveyed in 1842, and lot 5 was patented to one Dan-

forth,. plaintiff's remote grantor, in 1854. The island in question was never surveyed until 1905. No witness testified to the position of the island at the time of either of the government surveys of the banks, but an island appeared upon each plat. On the plat of the south bank, made in 1833 and 1834, an island was outlined opposite lots 1, 2, 3, and 4 aforesaid, and was represented as being all or nearly all in the south half of the river, measuring between the banks, while in the plat of the north bank made in 1842 an island was represented opposite lot 5 aforesaid, wholly in the north half of the river. One or two witnesses who knew the island and the river since about 1850 testified that in their judgment the islands so marked on the two plats represented the same island, namely, the island in dispute. No witness was sworn who had any personal knowledge of the location of the island or the banks of the river prior to 1850, and the defendants' own evidence showed that since 1850 the island had been mostly in the north half of the river. The testimony was undisputed that the navigable channel of the river from 1850 to about 1870 was north of the island, but that since the last-named date it had been south of the island. There was considerable testimony showing that there had been a gradual change in the outlines of the island by gradual erosion and accretion, by reason of which it was now further from the south shore than in 1850; but there was no evidence of any change in the banks of the river since 1850 exceeding a few feet, and no evidence of any change at all prior to that date.

By special verdict the jury found (1) that not all of the island was north of a line midway between the banks of the river in October, 1854, but (2) that all of the island is now north of such line. Judgment being rendered for the plaintiff on the verdict, the defendants appeal.

For the appellants there was a brief by *Bentley & Kelley*, and oral argument by *F. R. Bentley*.

*Thos. W. King*, for the respondent.

WINSLOW, C. J.   It is settled in this state that where the state or nation makes a patent, without reservation, of lands on a navigable stream, the patentee takes title by favor or concession of the state to the center of the stream midway between banks, regardless of the navigable channel, subject to the rights of the public in the stream; and that he also takes title to any unsurveyed island included within such limits. *Chandos v. Mack,* 77 Wis. 573, 46 N. W. 803; *Sliter v. Carpenter,* 123 Wis. 578, 102 N. W. 27.   The rule is necessarily modified in the case of a river which forms the boundary line between states, because the boundary line in such cases is the center of the main or navigable channel.   *Franzini v. Layland,* 120 Wis. 72, 97 N. W. 499.   It is equally well settled that where the United States grants lands bounded by streams and makes no reservation or restriction, the grant will be given effect according to the law of the state in which the land lies (*Hardin v. Jordan,* 140 U. S. 371, 11 Sup. Ct. 808, 838); and where according to such local law the title extends to the middle of the stream and includes an unsurveyed island, the United States cannot divest such title by subsequent survey and patent to another, in the absence of a showing that the island was left unsurveyed by fraud or mistake.   *Grand Rapids & I. R. Co. v. Butler,* 159 U. S. 87, 15 Sup. Ct. 991; *Whitaker v. McBride,* 197 U. S. 510, 25 Sup. Ct. 530.

It necessarily follows that the survey of the island in 1905 and the patenting of the same to the defendants can have no effect on the plaintiff's rights if his remote grantor acquired title to the island by the patent of lot 5 on the north bank of the river in 1854.

The evidence is without dispute that the greater part of the island was north of the center line of the river at that time, though the jury found that it was not entirely north of that line; so there can be no question but that the patent carried the greater part of the island, unless it had passed with

the south bank to Moses M. Strong when he purchased that
bank in 1837 or when it was patented to him in 1841.    But
there is an entire absence of evidence from which it could be
found that the island was in the south half of the river at
either of these dates.    True, there appears on the map of the
survey of 1833–34 the outline of an island near the south
bank of the river opposite the land afterwards patented to
Strong, but whether this outline was intended to represent the
island in question, as some of the witnesses thought it did, is
nothing but the purest conjecture. Neither court nor jury
would be justified in finding that the island was in the south
half of the river in 1833 from the mere outline on the map
of something not within the limits of the property surveyed
and which may have been intended to represent the island in
question or may have been intended to represent one of the
many evanescent, shifting sandbars which the evidence shows
frequently form in the river.    It follows that upon the evi-
dence here presented it must be held that the title to all that
part of the island north of the center line of the river and
opposite lot 5 passed to the plaintiff's remote grantor by the
government patent in 1854, and that such title was not di-
vested by the survey and patent of the island in 1905.

It is objected that the evidence does not certainly show that
the island is opposite to the plaintiff's land, and that the de-
scription of the property in the complaint and judgment is
indefinite and uncertain.    Neither of these points is well
taken.    A number of witnesses testified that the island was
directly opposite the plaintiff's premises; in fact there seemed
to be no dispute about it.    The description of the land in the
complaint and judgment is "Fraction Number Five in Sec-
tion two, Township eight North, Range five east" (excepting
a certain described parcel), "together with all the riparian
rights appurtenant thereto, including all islands opposite the
shore thereof and north of the thread of the river."    This is
a sufficient description, because, with the aid of a competent

surveyor, the lines can be run and the boundaries found. *Ayers v. Reidel,* 84 Wis. 276, 54 N. W. 588. It is to be remembered, of course, that when the boundaries of plaintiff's land reach the river they are to be produced to the center line between banks (or thread of the stream, which means the same thing), not directly north and south, but at right angles with the line of the thread of the stream.

*By the Court.*—Judgment affirmed.