BLATCHFORD, Appellant, vs. Voss and wife, Respondents.

*February 8, 1928—January 8, 1929.*

For the appellant there was a brief by *Jonas Radcliffe* of Eagle River, attorney, and *O'Melia & Kaye* of Rhinelander, of counsel, and oral argument by *A. J. O'Melia.*

For the respondents the cause was submitted on the brief of *E. D. Minahan* of Rhinelander.

The following opinion was filed April 3, 1928:

ESCHWEILER, J. The following sketch (1) reproduces the original plat from the government surveys in 1860 and 1862; and sketch (2) shows on a larger scale the conceded actual situation as to the water and land areas in section 13, town 42 north, range 5 east, in the above county.

(1)

Defendant Henry Voss owns lots 4 and 8. Plaintiff asserts title, by reason of his ownership of lot 7, to the small tract of about one acre marked "A" on sketch (2) which lies south of lot 4 and extends westerly to the lake from the northwest corner of lot 7.

Conceding that in this ejectment action plaintiff must succeed only by the strength of his own title (*Brown v. Baraboo,* 98 Wis. 273, 282, 74 N. W. 223; *Wilburn v. Land,* 138 Wis. 36, 37, 119 N. W. 803; *Hardin v. Jordan,* 140 U. S. 371, 379, 11 Sup. Ct. 808), nevertheless plaintiff asserts that inasmuch as the original government survey, *supra,* showed a meander line as part of the western boundary of lot 7, that he is entitled to cross the short portion of the north and south sixteenth line extended as shown on sketch (2), and to continue west from the body of lot 7 until

he reaches the actual water line, whatever may be the amount of intervening land. He bases this contention upon the undisputed general proposition that in such grants from the United States the water itself and not an indicated meander line is the true boundary line. *Boorman v. Sunnuchs,* 42 Wis. 233, 243; *Mendota Club v. Anderson,* 101 Wis. 479, 490, 78 N. W. 185; *Underwood v. Smith,* 109 Wis. 334, 340, 85 N. W. 384; *Hardin v. Jordan,* 140 U. S. 371, 11 Sup. Ct. 808; *Kean v. Calumet Canal Co.* 190 U. S. 452, 459, 23 Sup. Ct. 651; *Producers' Oil Co. v. Hanzen,* 238 U. S. 325, 339, 35 Sup. Ct. 755; *U. S. v. Lane,* 260 U. S. 662, 665, 43 Sup. Ct. 236.

This general rule, however, is subject to well recognized exceptions and limitations, such as where there was no actual body of water near the land in question (*Security L. & Exp. Co. v. Burns,* 193 U. S. 167, 179, 186, 24 Sup. Ct. 425; *Jeems Bayou F. & H. Club v. U. S.* 260 U. S. 561, 564, 43 Sup. Ct. 205), and that, as heretofore held by this court, in cases of conflict such meander lines must be held subordinate to government subdivision lines, either section lines; the quarter lines, dividing the sections midway; and the only other recognized subdividing lines, drawn between the section and quarter lines, which are, unfortunately for uniformity in nomenclature, referred to sometimes as the "eighth," sometimes as the "sixteenth," lines. This was held in *Whitney v. Detroit L. Co.* 78 Wis. 240, 47 N. W. 425; *Lally v. Rossman,* 82 Wis. 147, 149, 51 N. W. 1132; *Mendota Club v. Anderson,* 101 Wis. 479, 490, 78 N. W. 185; *Wisconsin Realty Co. v. Lull,* 177 Wis. 53, 62, 187 N. W. 978.

In considering the question here presented it must be noted that both sketches (1) and (2) indicate that a part only of the western boundary of this lot was water and show on both surveys divisional straight lines on all of the three sides and on a part of the west boundary; sketch (1) show-

ing, however, a much deeper indentation of the arm of the lake into lot 7 to the south as well as to the north than actually exists.

It is conceded that if the rule was correctly stated by this court in *Whitney v. Detroit L. Co.* 78 Wis. 240, 47 N. W. 425, holding that there cannot be a crossing of an eighth (sixteenth) line in order to reach a water boundary, and in *Lally v. Rossman,* 82 Wis. 147, 149, 51 N. W. 1132, holding that the patentee of a lot shown by the plat to be bounded by a river takes to the river itself, provided that such taking does not extend beyond the next eighth (sixteenth) line of the section, and as in *Wisconsin Realty Co. v. Lull,* 177 Wis. 53, 60, 187 N. W. 978, then the trial court was correct in holding that in this action plaintiff had shown no title to the strip of land in dispute here.

While it is true that questions as to the boundaries of lands adjoining waters, and the rights of the state and of individuals in respect to such lands and waters, shall be determined in conformity to the common law so far as applicable, sec. 30.01 (3) (c), Stats. (the substance whereof first appearing as sec. 3 of ch. 72, Laws of 1853, and thereafter as sec. 1597, Stats.), and that in *Hardin v. Jordan,* 140 U. S. 371, 11 Sup. Ct. 808, and *Mitchell v. Smale,* 140 U. S. 406, 11 Sup. Ct. 819, followed in *Hardin v. Shedd,* 190 U. S. 508, 23 Sup. Ct. 685, and *Kean v. Calumet Canal Co.* 190 U. S. 452, 23 Sup. Ct. 651 (although these decisions were accompanied by very vigorous and persuasive dissenting opinions), it was held that, following common-law rules, riparian ownership on streams and generally on inland bodies of water carried title to the center, and that in the particular instances in those cases presented government fractional lines might be crossed in the reach for water, yet in those cases and many others the primary rule is recognized that it is the state decisions that control as to disputes in regard to such class of titles.

It is manifest that difficulties and hardships in particular cases will be presented whatever sort of formula be adopted; it is equally manifest that there should be recognized some logical and consistent halting place in the search for water boundaries by those claiming title from the government by grants with meander lines as indicated boundaries; it is also manifest that when a formula has been once determined, titles given and taken in reliance thereupon, and many renewed recognitions thereof by the courts in any particular state, the adopted formula should be held as a rule of property to be consistently maintained unless grievous error.

Whatever may be now said or thought of the former decisions of this court declaring the law of this state, that in searching for a water boundary to a fractional lot which by government survey indicates a water boundary other than actually existing, the title conveyed by the grant of such fractional lot includes any land between the indicated meander line and the actual water, provided that there be thereby no extending beyond any indicated government subdivisional line or extension thereof, and in spite of the vigorous and able attack upon them made by appellant's counsel, and particularly upon *Whitney v. Detroit L. Co., Lally v. Rossman,* and *Wisconsin Realty Co. v. Lull, supra,* we are constrained to still adhere to the same, and especially so upon a state of facts such as here presented.

We see no conflict between the rule in those cases and now reiterated and the case of *Brown v. Dunn,* 135 Wis. 374, 115 N. W. 1097, *supra,* strongly relied upon by appellant's counsel here and asserted by him to be a holding inconsistent with or contrary to that stated in the cases above cited. That case expressly refers to 78 Wis. 240 and 82 Wis. 147, both *supra,* at page 398, and in no wise limits or criticises what was held in those cases, but only, and properly held, upon a state of facts showing that the meander lines on the original plat and survey of the lot, the patent to

which was there in question, extended somewhat to the north and to the east of the subdividing lines there shown on the government plat; and further, that in extending such meandered boundary line to the actual edge of the water there was no crossing of any other subdividing lines indicated on the original survey, and involved no infringement on any thereon indicated possible rights of others.

A criticism is also made by plaintiff's counsel upon what he contends is a mistaken statement of law made in *Whitney v. Detroit L. Co.* 78 Wis. 240, 47 N. W. 425, *supra,* particularly the language therein at p. 246, "whenever the question in any court, state or federal, is whether a title to land which had once been the property of the United States has passed, that question must be resolved by the laws of the United States." It may be conceded that such statement is not accurate in view of what was said by this court in *Farris v. Bentley,* 141 Wis. 671, 674, 124 N. W. 1003, and as often held by the federal courts, namely, that where questions as to land titles under federal grants are to be determined the solution is to be found under the particular laws and court decisions of the state wherein such land lies, rather than under any general or federal rule. So it is stated in *Whitaker v. McBride,* 197 U. S. 510, 512, 25 Sup. Ct. 530; *Wilson & Co. v. U. S.* 245 U. S. 24, 29, 38 Sup. Ct. 21; and *Massachusetts v. New York,* 271 U. S. 65, 93, 46 Sup. Ct. 357. Any necessary modification or withdrawal, however, of the above quoted language in the *Whitney Case* does not affect the result here, but on the contrary fortifies the position here taken, viz. that such questions are for the state in which the land is found, to declare.

We are not now determining whether the particular one-acre strip here involved marked "A" shall be considered a part of government lot 4 to the north thereof or as included in defendant's government lot 8, because such question is not before us.

Neither does it appear that there is possible danger to titles to lands adjoining the vast number of lakes in our state on account of the federal legislation referred to by appellant's counsel in the act of Congress of February 27, 1925, providing for the resurvey and resale of lands in Wisconsin not lawfully appropriated, between meander lines and shore lines, in view of the recognized rule of the federal court that rights acquired in lands surveyed and disposed of by the Land Department are not affected by corrective surveys thereafter, as stated in *New Mexico v. Colorado,* 267 U. S. 30, 41, 45 Sup. Ct. 202; *Farris v. Bentley,* 141 Wis. 671, 674, 124 N. W. 1003, *supra,* and which is the rule in all other than particular cases of fraud or mistake as to the existence of any body of water, as is pointed out in *Lee-Wilson & Co. v. U. S.* 245 U. S. 24, 29, 38 Sup. Ct. 21.

The trial court was therefore correct in holding that the plaintiff has not established title to the strip of land in question.

*By the Court.*—Judgment affirmed.

The following opinion was filed January 8, 1929:

ESCHWEILER, J. Upon rehearing the court withdraws from the former decision so much thereof as disposed of this case upon a there declared reiteration of and re-adherence to the so-called eighth-line rule as based upon the cases of *Whitney v. Detroit L. Co.* 78 Wis. 240, 47 N. W. 425; *Lally v. Rossman,* 82 Wis. 147, 51 N. W. 1132; and *Wisconsin Realty Co. v. Lull,* 177 Wis. 53, 187 N. W. 978. This, however, is so far, and so far only, as our former opinion in this case and the prior decisions just above cited is and are considered as holding that an intercepting governmental subdivision line is, in and of itself, a complete bar to further search for an actual water boundary by the holder of patent titles from the United States government in situa-

tions where such a water boundary is represented in the original plat or survey; and we now declare the rule of this state to be, that such an intercepting governmental subdivision line is not to be deemed an absolute and controlling feature, but one only of the many that may be properly considered in solving such a problem as is here presented.

We now affirm the judgment below upon the broader and unquestioned rule of law that, in questions such as here presented, the primary consideration is to ascertain, as far as now possible, what should be deemed was the intention or purpose in the original government survey and chamber platting of the property bordering on any particular body of water. Such a rule is recognized as to patents from the United States in *Shufeldt v. Spaulding,* 37 Wis. 662, 668; *Lyon v. Fairbank,* 79 Wis. 455, 461, 48 N. W. 492; *Brown v. Dunn,* 135 Wis. 374, 379, 115 N. W. 1097; just as it is for subsequent conveyances. *Wis. Realty Co. v. Lull,* 177 Wis. 53, 61, 187 N. W. 978.

The rectangular method of surveying and platting was chosen by the government and has been constantly maintained. *Massie v. Watts,* 6 Cranch, 148, 166; *Martin v. Carlin,* 19 Wis. 454, 456; *Whitney v. Detroit L. Co.* 78 Wis. 240, 247, 47 N. W. 425; Clark, Surveys and Boundaries, sec. 4.

The forty-acre quarter-quarter section was the primary unit in the division of land by government survey. When such unit could not, owing to particular situations presented, be used, then, and not until then, were fractional subdivisions authorized to be created which might have less or more than the forty acres of the primary unit. *Gazzam v. Phillips,* 20 How. (61 U. S.) 372, 377.

It may therefore be properly assumed that in questions such as here presented of adjustments to permit, if possible, of actual water boundaries, where such boundaries were represented on the original plat and survey, that the original

purpose was to vary as little from and to conform as nearly as practicable with the established standards as to quantity of land, rectangular lines, and conformity with established subdivisional lines.

In disposing of the present problem we are not met with the situation presented in most if not all of the many decisions concerning water boundaries where, when the lines of the original plat (other than the meanders) are applied in survey of the actual ground, there is a result showing no water frontage at all; for here plaintiff's lot 7 has water frontage by actual survey as well as by the original plat. The present survey does not deprive him of *a* frontage on the lake, but restricts him to less than originally shown; but he, in effect, is insisting that he is entitled to as much actual water frontage as was first indicated. Such a claim, if fully and logically carried out, would permit him to take a large piece of lot 8, as indicated on the sketches *supra,* in order to complete his claimed shore line, inasmuch as the indentation by the bay was much more to the south on the original plat than it is on the actual survey.

Considering, therefore, all recognized proper elements, and comparing the actual survey with the original plat, the conclusion is well nigh irresistible that the original plat would have, if the actual situation had been understood, confined the outside lines of lot 7 to the rectangular form so clearly indicated by the straight lines then shown on all of the three sides and part way on the west side of the lot, and would not have crossed over to include the claimed narrow strip A, sketch 2, adjacent to the northwest corner of lot 7, nor crossed the same west north-and-south sixteenth line south of the actual line of the same bay or indentation.

We therefore reach the same conclusion as before declared.

*By the Court.*—Judgment affirmed.