JAMES KEENAN AND WIFE *v.* MICHAEL CAVANAUGH.

*Deed. Description. Fence. Trespass. Damage.*

Boundaries or monuments, as a general rule, govern and control courses and distances in the description in a deed; therefore, where the evidence called for an application of this rule in proper instructions to the jury, it was error for the court, upon request, not to apply the rule.

By the common law the owner of cattle is bound to keep them from straying into the possessions of others. If he fails to do so, and they do damage in such straying, the injury is his trespass. The statutes of this State in respect to fences between occupied lands do not relieve the owners of cattle from this common law duty.

When such fences are divided pursuant to the statutes, and an adjoining owner fails to maintain his part of the fence, and cattle of the other adjoining owner stray into his close through that part of the fence and do damage, he cannot recover for the entry or damage, for the reason that his own neglect contributes to the injury.

Where the fence was not divided, and the defendant's calf entered into the plaintiff's close and injured the trees, this injury was an aggravation of the trespass committed by the entry, and although that injury may not be such as cattle are by nature wont to commit, and not of itself alone a trespass of the defendant, the damage done by it can be recovered with the damage done by the trespass it was a part of.

TRESPASS *quare clausum fregit.* Plea, the general issue. Trial by jury, September term, 1871, ROYCE, J., presiding.

It was conceded on trial, that one Theodore W. Smith was once the owner of the land in dispute, and the lands adjacent; and both parties claim to derive title from him. The plaintiff introduced a lease from said Smith to Patrick Keenan, dated February 5th, 1853; also a warranty deed from said Smith to Pat-

rick and James Keenan, dated April 2d, 1861, conveying land in St. Albans, described as follows:

" Commencing in the east line of the street, at the south-west corner of Joseph Jaques's land, thence easterly in said Jaques's south line twenty rods to Calvin Wright's land, thence southerly in the line of the fence sixteen rods to Richard Hurley's land, thence westerly in said Hurley's north line twenty rods to the street, thence northerly in the east line of the street sixteen rods to the place began at: containing two acres of land, and is the same place now occupied by Patrick Keenan."

Also a quit-claim deed from Patrick Keenan to James Keenan, of the same premises, dated November 1st, 1863.

The plaintiff also introduced testimony tending to show that in 1852 his father, Patrick Keenan, made a parol contract with said Smith for the land described in the lease above referred to, and took possession of said land; and that in the fall of 1852 or winter of 1853, Smith had the lines to said lot run by a surveyor, and a stake was stuck by said surveyor as indicating the south-west corner of the lot in question, and a mark was made on a fence as indicating the south-east corner of said lot; that in the year following, a post was set in the place of the stake above named, and a fence was built between that lot and the one south of it; that at that time one John Ragan was in occupancy of the lot south of this, holding under a lease from said Smith, dated February 5, 1853—which was put in evidence; that said Ragan and said Smith were present when said post was set, and that said Ragan consented to and acquiesced in said post and fence as the division line between said lots; that said fence was acquiesced in by said Ragan as the line, until he disposed of his interest in said premises to one Hurley, in 1856, and also by said Hurley, until he disposed of his interest to said Patrick Keenan, September 20, 1863, and by said Keenan until the 19th of December, 1865, when he conveyed his interest to defendant and his wife Mary, who have occupied said premises since; that said post has remained standing in the same place to the present time.

That some time in 1866 and 1867 the defendant committed part of the trespasses complained of, by putting obstructions in a certain ditch which plaintiff's evidence tended to show was north of the

fence so acquiesced in as the line, and which was dug to drain the water from the plaintiff's cellar into the highway-ditch. The plaintiff also introduced testimony—against defendant's objection—tending to show that a calf of defendant's entered upon plaintiff's premises and bit off some limbs of one of plaintiff's trees, and broke another tree, and that said calf strayed into plaintiff's premises through what witnesses said was defendant's portion of the fence.

There was no evidence tending to show that there had ever been any division of the fence between said lots by plaintiffs and defendant, and none that tended to show that there had been any division by any of the previous proprietors—except what might be inferred from the fact, as stated by some witnesses, that when said fence was built, in 1853, John Ragan built the westerly end and Patrick Keenan the easterly end. There was no evidence tending to show that defendant had anything to do with the straying of said calf. The plaintiff—before the straying of the calf into his enclosure—told the defendant to put up his part of the fence, and he refused to do so.

Plaintiff also introduced the said Theodore Smith, as a witness, who testified that he laid out the lots on said street: that in measuring the lots now occupied by plaintiff and defendant, he measured from Lake street, and that in measuring the lots north of these, he commenced at the other end of Cedar Street, and measured southerly; that he supposed there was an excess of land in the Jaques lot, (being the one north of plaintiff's), which, as the witness testified, was the last one he sold.

This witness also testified that the point where the northwest corner of plaintiff's lot was run by the original survey, was somewhere in a ditch, which he described, but that its exact location did not now appear from the fact that the sides or banks of said ditch had caved in so as to leave no trace of the exact location of the corner. On cross-examination, this witness testified that the northwest corner of the lot north of plaintiff's lot, or the Jaques lot, as indicated by the fence, was the true corner of said Jaques lot, and is the same one referred to in the deed of that lot.

No question was made on this trial but that this corner, by some witnesses called the Jodway corner, was the true corner of said lot.

This witness also testified that he intended to convey by his deed to Patrick and James Keenan, in 1861, all of and the same land he leased to Patrick Keenan in 1853. The defendant introduced testimony tending to dispute the commission of the alleged trespass, except that of the calf. No question was made but that the land on which the calf had strayed was part of plaintiff's lot. The defendant also put in evidence the lease from Smith to Ragan, already referred to, an assignment of same from Ragan to Richard Hurley, dated January 23d, 1856, and a joint warranty deed from Richard Hurley, Annie Hurley, and Theodore W. Smith, to Patrick Keenan, dated December 10th, 1863. The description of said last named deed is as follows:

" Commencing at the east line of the street at the southwest corner of land owned by James Keenan, thence running southerly in the east line of the street, so far that by running easterly in a line parallel with the lake road, to land heretofore leased by said Smith to William Cain ; thence northerly to said Cain's northwest corner; thence easterly to the north and south fence ; thence northerly in the line of said fence to the said James Keenan's land, and thence westerly in said Keenan's south line to the place begun, will make one and one-fourth acres of land."

The defendant also introduced a quit-claim deed of said premises, by the same description, from said Patrick Keenan and wife, dated December 9th, 1865.

The plaintiff objected to the admission of said deeds, leases, and assignments, but assigned no reason for said objection. The court admitted the deeds, leases, and assignments, to which the plaintiff excepted.

The defendant also offered in evidence a certified copy of record of deed from Theodore W. Smith to Joseph Jaques, dated March 17th, 1858, for the purpose of showing, in connection with the testimony of said Smith, as to the location of the northwest corner of said lot, the true location of the southwest corner of said Jaques's lot being the starting point referred to in said deed from Smith to Patrick and James Keenan, April 2d, 1861, and intro-

duced as part of plaintiff's testimony; to this plaintiffs objected, but the court admitted the deed in evidence for the purpose named, t⟩ which plaintiffs excepted.

The description in said deed is as follows :

" Commencing in the east line of the street at the southwest corner of said Jodway's land, thence easterly in said Jodway's south line twenty rods to the fence ; thence southerly in the line of the fence eight rods to Patrick Keenan's land ; thence westerly in said Keenan's north line twenty rods to the street; thence northerly in the east line of the street eight rods to the point begun at, containing one acre of land, it being the same land now occupied by Pascal Miller."

The defendant also introduced the testimony of one Jewett, a surveyor, and one Burgess, who assisted in measuring, tending to show that it appeared by measurement, according to the description in said deeds, the corner in dispute was where defendant claimed it to be, and also by measurement from the lake road, according to the description of the Ragan lease, the corner was found to be within three inches of the same place.

It was not disputed that the distance from the east line of said street to the east line of the lots in question, was just twenty rods, as stated in the deed.

The plaintiffs requested the court to charge, that if they found that T. W. Smith in the year 1852, went with a surveyor and laid out said lots, and located, measured, and marked upon the face of the earth the true line between the plaintiff and defendant, by certain measurements, monuments and marks, as the plaintiff's testimony tended to establish ; and said lines, measurements, monuments and marks, thus agreed upon and established at that time, between the adjoining land-holders, and thereafter made, recognized and treated by said adjoining land-holders as the true line between them, it is conclusive upon the parties and their assigns, and upon the defendant in this case, although it be subsequeutly ascertained that it may vary the one given in the deed.

That if the plaintiffs and their grantees or assignees were in the peaceable enjoyment of the *locus in quo*, and of the line in dispute for fifteen years, then plaintiffs must recover.

That the defendant having wilfully left his share of the said line fence down, so that defendant's calf entered upon the plaintiff's close and destroyed plaintiff's trees thereon standing, would make the defendant liable in this action.

So far as the charge hereinafter stated differs from said requests, the court declined to charge, but did charge:

That the plaintiffs' title of record was derived from the deed of April 2d, 1861, from Smith to Patrick and James Keenan; that if the lease to James Keenan covered any different land, the plaintiff had not shown any title to such other land, inasmuch as it appeared that Patrick had conveyed to James only the same land deeded to them by Smith; that in order to determine what land Smith conveyed, the jury must carefully examine that deed; that the amount of land purported to be conveyed was just two acres, or a piece sixteen rods one way and twenty rods the other; that when the jury were able to get at the starting point named in that deed, they would be enabled to determine where that two acres of land was; that to find that starting point and for no other purpose, they might examine the deed to Jaques, which shows that the starting point was just eight rods from the Jodway corner; that having found that starting point, the plaintiff was entitled by that deed to just sixteen rods on Cedar street, and no more, and the corner in dispute should be just sixteen rods from the southwest corner of the Jaques lot; that if from the testimony they found the measurement of Jewett to be correct, and believed his testimony, then they should find the corner in dispute to be at the place described by him.

The court further charged the jury as to plaintiffs' claim, that a line had been acquiesced in by the parties; that in order to bind parties to a mistaken boundary, it was necessary that such boundary should be acquiesced in for fifteen years, and no right could be acquired by acquiescence for any period short of that time.

The court further charged the jury that if the land in dispute was not contained in the deed, still if the party entered upon the land, and claimed it was embraced in the deed, and occupied it adversely to anybody else for fifteen years, that might make a title by possession; that if they found there was any testimony that would warrant them in saying there had been fifteen years of undisputed, peaceable and adverse possession, then they might say the plaintiff could sustain the suit upon the ground of possessory right, but the plaintiff must have some title; that although possession without title was good as against a stranger, the defendant could not from the testimony be regarded a stranger to any of the land in dispute, not included in plaintiffs' deed.

The court also charged the jury that plaintiff could not recover under the testimony and declaration for the alleged trespass of the calf.

To the charge of the court and refusal to charge as requested, the plaintiff excepted.

The plaintiff also requested the court to charge the jury that in the construction of deeds, monuments and the intentions of parties must control courses and distances—instead of general description. But the court refused to charge except as before stated.

The said lease from Theodore W. Smith to Patrick Keenan described the land leased as follows:

" Commencing at the northwest corner of land the said Smith has leased to John Ragan, or the Church place, so called, thence easterly in the north line of said Ragan's lot twenty rods, thence northerly in a line parallel with the road sixteen rods, thence westerly in a line parallel with the first mentioned line twenty rods to the east line of the road sixteen rods to the place begun at."

This lease provided that, upon payment of the rent therein stipulated to be paid on the first day of January then next, and four hundred dollars, and the taxes then due or assessed thereon, said Smith was to warrant and defend the premises to said Keenan, his heirs and assigns, forever.

The description in said lease from Smith to Ragan was as follows:

" Commencing at the southwest corner of land, the said Smith has leased to William Cain; thence northerly on said Cain's west line about sixteen rods; thence easterly in said Cain's north line about six rods; thence northerly in a line parallel with the road eight rods; thence westerly to the east line of the road at a stake; thence southerly in the east line of the road about twenty-four rods to the lake road; thence easterly in the north line of the lake road to the place begun at."

This was a perpetual lease at $30 rent *per annum*, with the privilege to Ragan of paying $500 by the next January, and all rents then due, and having a warranty deed of the premises.

The declaration was in two counts: one for filling up the plaintiff's cellar drain with ashes, slops, and other things named, and thereby preventing water from running from plaintiff's cellar; the other for breaking and entering plaintiff's close, and breaking down his shed and trees.

*E. A. Soule* and *Noble & Smith*, for the plaintiff.

*W. D. Wilson*, for the defendant.

The opinion of the court was delivered by

WHEELER, J. The lease from Smith — who then owned the whole premises — to Patrick Keenan of the land now the plaintiffs' lot, and the one from him to John Ragan of the land now the defendant's lot, appear both to have been executed on the same day. The north line of the land leased to Ragan and the south line of that leased to Keenan, was one and the same line. That line, as described in the lease to Ragan, was wholly artificial except that it ran " westerly to the east line of the road at a stake." As described in the lease to Keenan, it was " in the north line of said Ragan's lot." The line could be traced upon the ground only by measurement of distances and by the location of the stake. The evidence of the plaintiff tended to show that measurement was made about the time of the making of the leases, and that afterterward the line ascertained was assented to by all who were interested in it, and that it was then permanently located upon the ground and its position marked by a post at the west end and a fence throughout its course. When this was done, the line became a boundary established and known. The deed of the plaintiffs' lot from Smith, — made in pursuance of the provisions of the lease — was after the post had been set and the fence built, and while the lot now the defendant's was one Hurley's. That deed described the land conveyed by lines and distances on all sides, but described the east line as extending " thence sixteen rods to Hurley's land," and the south line as being " thence westerly in Hurley's north line." From the bill of exceptions it appears that if the land described in that deed should be traced out upon the ground by following the lines and distances from the place of beginning round to the same place, the land in dispute would be excluded from the plaintiffs' land ; and that if the east line should be extended to Hurley's land and the south line should be placed in his north line as the fence and post marked his north line at the time of the deed, the land in dispute would be included in the plaintiffs' lot. Whenever, in the description of land in a conveyance, courses and distances and also known boundaries or monu-

ments are given to describe the same line, and there is a discrepancy between the courses or the distances and the monuments or the boundaries, because it it is more likely that there would be a mistake or a misunderstanding about the course or the distance than about the monument or the boundary, the latter, as a general rule, govern and control the former. The evidence in this case called for an application of this rule in proper instructions to the jury. The court, although requested, did not apply the rule, and in the charge gave instructions contrary to it. In this there seems to have been error.

Cattle by nature are wont to stray abroad. By the common law the owner of them is bound to keep them from straying into the possessions of others. If he fails to do so, and they do damage in such straying, the injury is his trespass. The statutes in respect to fences between occupied lands, do not relieve the owners of cattle from this common law duty. *Sorenberger* v. *Houghton*, 40 Vt., 150. When such fences are divided pursuant to the statutes, and an adjoining owner fails to maintain his part of the fence, and cattle of the other adjoining owner stray into his close through that part of the fence, and do damage, he cannot recover for the entry or damage, for the reason that his own neglect contributes to the injury. The statutes were the same in this respect, at the time of the injury complained of, that they are now. The fence between the plaintiff and the defendant does not appear to have been divided, and the entry of the calf into the plaintiff's close was the defendant's trespass. The injury done by the calf to the trees was an aggravation of the trespass committed by the entry, and although that injury may not be such as cattle are by nature wont to commit, and not of itself alone a trespass of the defendant, the damage done by it can be recovered with the damage done by the trespass it was a part of.

The ruling of the court upon this subject seems to have been contrary to these views, and to have been erroneous.

Judgment reversed and case remanded.