EDWARD YANISH *et al.* *vs.* JASPAR B. TARBOX *et al.*

Argued Jan. 26, 1892.   Decided April 7, 1892.

**Deeds — Boundary Lines, how Identified. —** It is a general rule, when identifying boundary lines, that fixed and known monuments or objects, called for in a description found in a deed of conveyance, must prevail over given courses and distances; the order of application being—*First*, to natural objects; *second*, to artificial marks; and, *third*, to courses and distances.

**Site of Monuments since Obliterated must be Fixed with Reasonable Certainty.—**But where monuments or objects or marks have been removed or obliterated, their former site or location must be fixed and established with reasonable certainty, in order that they shall prevail over the lines established by explicitly given courses and distances, or to throw an evident error of description by courses and distances into the second boundary line as given, which otherwise would be charged to the fourth or last line, and corrected by rejecting the given courses and distances and bringing the last line direct to the terminus definitely described in the conveyance as "the point of beginning."

**Evidence in this Action Considered.**—The evidence in this case examined, and *held* not to support the findings of fact in respect to the construction to be placed upon a description of land as found in a deed of conveyance.

Appeal by plaintiffs Edward Yanish and Samuel G. Horsnell from a judgment of the District Court of Ramsey County, *Kerr,* J., entered September 26, 1891, adjudging that defendants are owners of a part of Lot four (4) in Block twenty (20) in Olivier's Addition to West St. Paul.

In April, 1855, Henry Belland owned, by patent issued to him by the United States, Lots two (2) and three (3) in section seven (7) in Township twenty-eight (28,) Range twenty-two, (22,) containing about one hundred and twenty (120) acres, in what is now the city of St. Paul, and located on the bluff south of the Mississippi River and near the south end of the high bridge. On February 22, 1856, Belland and wife deeded to D. A. J. Baker a part of this land described in the deed as follows:

Beginning at a point north sixty-five degrees thirty minutes east (N. 65° 30′ E.) from the quarter section post on the west line of section seven, (7,) Town twenty-eight (28) north, of Range twenty-two (22) west, distant fourteen and twenty one-hundredths (14.20) chains, being the southeast corner of land sold by Henry Belland to Joseph Craig; running thence south twenty-seven degrees and ten minutes west (S. 27° 10′ W.) six and seventy-nine one-hundredths (6.79) chains to a stake; thence *north* seventy degrees and forty minutes east (N. 70° 40′ E.) five and eight one-hundredths chains (5.08 ch.) to a stake at the center of county road; thence north thirty degrees and forty-five minutes east (N. 30° 45′ E.) along the center line of said road seven and thirty-four one-hundredths (7.34) chains to a stake; thence north seventy-six degrees west (N. 76° W.) five and sixty-nine and one-half one-hundredths (5.69½-100) chains to the point of beginning; containing three and eight-tenths (3.8) acres of land, be the same more or less.

The controversy in this case is whether the italicized word *north* in the second course bounding the land should not be *south*. In the

map the dotted lines show the boundaries as claimed by plaintiffs, and the plain lines the boundaries if corrected as claimed by defendants.    There was then a house on the land, and Baker took posses-

sion of it under his deed, and on July 29, 1873, conveyed the land to Morris Lamprey by deed containing a description of the property copied literally from the Belland deed.    The county road mentioned in these descriptions was claimed to be the same road then called

the Credit River Road, but its location was not at the trial definitely ascertained. The land was never inclosed by fences. Belland and others on May 30, 1856, platted a large tract of land in that vicinity into blocks and city lots, including the lot in controversy, naming it Olivier's Addition to West St. Paul.

Belland and wife, on December 22, 1856, deeded to Mrs. Nancy H. Blum Lot three (3) and all their interest in Lots four (4) and five (5) in Block twenty (20) in Olivier's Addition to West St. Paul, and plaintiffs have since acquired her title through Wm. R. Sache by quitclaim deeds. The defendants are the widow and heirs of Morris Lamprey, she having since married Jasper B. Tarbox. If the deed to Baker reads correctly, the dotted lines shown on the map would be the boundary as claimed by plaintiffs, and would not include any part of the Blum lots in Block twenty, (20.) But if the word "*north*" should be read "*south*" the plain lines on the map would be the boundary as claimed by defendants, and would include about one-half of Lots four (4) and five, (5,) cutting them practically from near the southwest corner of five (5) to near the northeast corner of four, (4,) as shown by the map.

The action is brought under the statute 1878 G. S. ch. 75, § 2, to determine adverse claims to real estate. It was tried June 9, 1891, without a jury. Findings were made and filed July 6, 1891, and judgment ordered for defendants on the ground that the word "*north*" in the second course of the boundary of the land was intended for "*south*" as claimed by defendants. Judgment was entered accordingly, and plaintiffs appealed.

*Walter L. Chapin,* for appellants.

Defendants claim they are entitled to a reformation in equity of the deed from Belland to Baker and of that from Baker to Lamprey; and that the description in those deeds is such that the second course of the description should read *south* 70° 40′ east as a matter of law. The trial court found the plaintiffs were not *bona fide* purchasers because there were quitclaim deeds in their chain of title, and they were therefore charged with constructive notice from these deeds. The statute places all quitclaim deeds on the same footing

as warranty deeds as regards constructive notice, whether the deeds were recorded before the amendment of 1875 or not. 1878 G. S. ch. 40, §§ 4, 21; *Strong* v. *Lynn,* 38 Minn. 315; *Nidever* v. *Ayers,* 83 Cal. 39.

Plaintiffs could not be held to constructive notice of Baker's or Lamprey's rights to have their deeds reformed if such rights existed, for the record protects them. *Bailey* v. *Galpin,* 40 Minn. 319; *Wilcox* v. *Leominster Nat. Bank,* 43 Minn. 541.

It matters not whether the plaintiffs had notice or knowledge of Lamprey's claim, as Wm. R. Sache, one of the intermediate grantees between Mrs. Blum and them, was a *bona fide* purchaser for value, and plaintiffs took his title regardless of their own knowledge of the error, if there was one. Sache's title protected all following him. *East* v. *Pugh,* 71 Iowa, 162; *Snowden* v. *Tyler,* 21 Neb. 199; *Trull* v. *Bigelow,* 16 Mass. 406; *Bray* y. *Campbell,* 28 Mo. App. 516; *Church* v. *Church,* 25 Pa. St. 278; *Basset* v. *Nosworthy,* 2 Lead. Cas. Eq. 33, note; 2 Pom. Eq. Jur. § 754.

Where a court of equity is called upon to reform a written instrument, both the agreement and the mistake must be made out by the clearest evidence according to the understanding of both parties as to what the contract was intended to be, and upon testimony entirely exact and satisfactory. *Tesson* v. *Atlantic Mut. Ins. Co.,* 40 Mo. 33; *Tucker* v. *Madden,* 44 Me. 206; *Guernsey* v. *American Ins. Co.,* 17 Minn. 104, (Gil. 83;) 2 Pom. Eq. Jur. § 859.

Defendants make the further claim that they are entitled to a construction of the deed as matter of law, which shall make the second course read *south* 70° 40' *east.* Plaintiffs contend that, taking the description of the land in the Baker and Lamprey deeds in the absence of a definite location of the county road, there is given a description certain in itself without extrinsic evidence, and capable only of one construction; that is, the direction and distance of the last course must be rejected as a false particular, and the last course run to place of beginning from the end of the third course, as called for in the deed. *Gillespie* v. *Sawyer,* 15 Neb. 536; *Piercy* v. *Crandall,* 34 Cal. 344; *Thorwarth* v. *Armstrong,* 20 Minn. 464, (Gil. 419.)

In order that the apparently certain description by courses in the deed shall be overcome, it must appear from the evidence that the location of the other calls in the deed is such as to control them. These calls are those relating to the county road.   There is no competent evidence in the case relating to the location of the stakes mentioned in the deed.   *Cox* v. *Freedley*, 33 Pa. St. 124; *Mann* v. *Taylor*, 4 Jones, (N. C.) 272; *Massey* v. *Belisle*, 2 Ired. 177.

The only testimony concerning this road is that of Henry Belland, son of the original owner of the tract, who says there was an old traveled county road in Block nineteen, (19) in a hollow, close to a stake he had seen placed there, about fifty or sixty feet north of King street, about a year before the deed to Baker.   It ran in a crooked course, circled round the hollow north of King street, and came out into King street about forty feet east of Mohawk avenue, which is at least ninety feet west of where defendants would have the east line of the track run, and then cut off westerly or southwesterly. There is not one word in the testimony that this road touched or crossed Block twenty, (20.)   The road is now obliterated.   There was a road laid out in the vicinity by one Thompson, called the "Credit River Road," and known as the "County Road," which was supposed to be straight.   Witness only knows pretty near where it was located, and that it did not conform to the road as traveled. The testimony was too loose and indefinite to justify a finding as to the traveled road.   The findings of the trial court as to the location of the Credit River Road or county road were therefore unwarranted.

When a monument described in a deed cannot be found, and neither its location nor existence proven, the location of the land must be determined by the other parts of the description.   If the land is described by definite and distinct boundaries from which it may be located, the description cannot be varied or controlled by parol evidence.   *Drew* v. *Swift*, 46 N. Y. 204; *Bagley* v. *Morrill*, 46 Vt. 94; Devl. Deeds, § 1030.

Where there are no monuments, or if monuments once existing are gone, and the place where they originally stood cannot be ascertained, the courses and distances, when explicit, must govern, and

cannot be controlled or effected by parol evidence. *Linscott* v. *Fernald*, 5 Greenl. 496; *Bell* v. *Morse*, 6 N. H. 205; *Clark* v. *Baird*, 9 N. Y. 183; *Clark* v. *Wethey*, 19 Wend. 320.

*Chas. N. Bell* and *George E. Budd*, for respondents.

It is to be noticed that the description in the deed to Mrs. Blum is very peculiar. It matters not when this deed was made, the description is so peculiar that it puts Mrs. Blum and the plaintiffs and all other parties claiming through her upon inquiry. It conveys Lot three (3) with warranty, and all Belland's interest in Lots numbered four (4) and five (5) in Block numbered twenty, (20.) No matter what statute may now be in operation relative to quitclaim deeds, this deed, made in 1856, was so mongrel in its character, and so plainly indicating to Mrs. Blum and her grantees that Belland did not claim all of Lot four, (4,) that it put Mrs. Blum and her grantees upon inquiry, and charges them not only with an inference, but with a positive assertion that the grantors did not own all of Lot four, (4.) This deed is so drawn that the statute law relative to quitclaim deeds has no force or application to the case. Belland by this deed warrants the title to Lot three without any exceptions or reservations, and then he declares to Mrs. Blum that he does not convey all of Lot four, (4,) but in effect says to her, I convey to you Lot three, (3,) and covenant that I have good title to it; but I do not convey to you all of Lot four, (4,) I only convey to you so much of Lot four (4) as I have not already conveyed. *Marshall* v. *Roberts*, 18 Minn. 405, (Gil. 365.)

The order of applying descriptions of boundaries is—*First*, to natural objects; *second*, to artificial marks; *third*, to the courses and distances given in the deed. 3 Washb. Real Prop. p. 631; *Wendell* v. *Jackson*, 8 Wend. 183; *Hurley* v. *Morgan*, 1 Dev. & B. 425; *Riley* v. *Griffin*, 16 Ga. 141; *Cherry* v. *Slade*, 3 Murph. 82; *Bradford* v. *Hill*, 1 Hayw. (N. C.) 22; *Muhlker* v. *Ruppert*, 124 N. Y. 627.

Substitute one word, "*south*," for the word "*north*" in the second course of this deed, and you satisfy all the calls in this deed, the angles, the distances, the area named in the deed, in the evidence as to the location of the road and the stakes. *White* v. *Williams*, 48 N. Y.

344; *Mizell* v. *Simmons*, 79 N. C. 182; *Morton* v. *Root*, 2 Dill. 312; *Beal* v. *Gordon*, 55 Me. 482; *Jackson* v. *Blodget*, 16 John. 173.

The northwestern corner of the tract, the Craig corner or starting point, is not in doubt. It is well established. If we reverse the second call in the deed, calling it "*south* seventy degrees and forty minutes east," in place of "*north* seventy degrees and forty minutes east," the description will close exactly and without any loss or change whatever in any distance named, and the area is also correct. If we wholly ignore the stakes and county road, then defendants' theory that the second course is wrong is to be preferred to the theory of the plaintiffs that the fourth course is wrong. Under plaintiffs' theory we must not only change the angle, but change the distance and also the area. Defendants have by their evidence located the road upon the east line of the tract as they located the tract, and, while they may not have located the road to a foot, yet they have located the road and the stakes in the road with sufficient definiteness to make it impossible that plaintiffs' theory as to the location of the east line of the land should prevail.

COLLINS, J. On the trial of this action, which was brought to determine an adverse claim made by defendants to a part of lot four (4) of block twenty (20) in Olivier's addition to West St. Paul, it became necessary for the court below to construe in the light of the testimony which had been produced the description found in a certain deed of conveyance, wherein the original patentee from the general government—one Belland—and his wife were grantors, and D. A. J. Baker grantee. The tract of land was described in said deed and in others, through which defendants claim title to a part of lot four (4) by metes and bounds, as follows: "Beginning at  *  *  *, the southeast corner of land, sold by Henry Belland to Joseph Craig; running thence south, twenty-seven degrees and ten minutes west, (27° 10′ W.,) six and seventy-nine one-hundredths chains, (6 79-100,) to a stake; thence north, seventy degrees and forty minutes east, (N. 70° and 40′ E.,) five and eight one-hundredths (5 8-100) chains, to a stake at the center of county road; thence north, thirty degrees and forty-five minutes east, (30° and 45′ E.,) along the center line of

said road, seven and thirty-four one-hundredths (7 34-100) chains to a stake; thence north, seventy-six degrees west, (76° W.,) five and sixty-nine and one-half one-hundredths (5 and 69½-100) chains, to the point of beginning; containing three and eight-tenths (3 8-10) acres of land, be the same more or less."

The deed bore date February 22, 1856, and was duly recorded some months prior to the laying out and platting of Olivier's addition on the same government subdivision. The starting point mentioned, fixed and well known as "Craig's Corner," is, admittedly, easily located on the ground. From thence, reading the description without any information or knowledge as to the location of the county road, the center line thereof being designated by courses and distances as the third boundary line, no error or uncertainty appears until the last line is reached. This, according to the deed, is thence, by a given course and distance, "to the point of beginning;" but the given course and distance, if followed, would terminate this last line about 200 feet north of Craig's corner, the agreed place of beginning. The lines described by courses and distances would not complete the inclosure of any land. Without sufficient testimony as to the location of the county road, and hence as to the sites of the stakes in its center line, the description by courses and distances would, of necessity, govern. Where there are no monuments, or, if monuments once existing are gone, and the place where they originally stood cannot be ascertained, the courses and distances, when explicit, must govern, and cannot be controlled or affected by parol. *Linscott* v. *Fernald*, 5 Greenl. 497; *Bell* v. *Morse*, 6 N. H. 205; *Bagley* v. *Morrill*, 46 Vt. 94; *Wilson* v. *Hildreth*, 118 Mass. 578; *Drew* v. *Swift*, 46 N. Y. 204; *Clark* v. *Wethey*, 19 Wend. 320. But, while these courses and distances were explicit, the course and distance of the last line would have to be rejected as erroneous, and effect given to the more certain description found in the deed,—thence "to the point of beginning." *Owings* v. *Freeman*, 48 Minn. 483, (51 N. W. Rep. 476.) This follows from the general rule, applicable also to this entire description, that in identifying boundary lines fixed and known monuments or objects called for in a description — the point of beginning, Craig's corner, and the county road and stakes therein, being such in this

case — must prevail over given courses and distances; the order of applying descriptions or boundaries being—*First,* to natural objects; *second,* to artificial marks; and, *third,* to courses and distances. 3 Washb. Real Prop. p. 631; *Haynes* v. *Young,* 36 Me. 557; *Keenan* v. *Cavanaugh,* 44 Vt. 268; *Morse* v. *Rogers,* 118 Mass. 572; *Cunningham* v. *Curtis,* 57 N. H. 157; *Watson* v. *Jones,* 85 Pa. St. 117; *Muhlker* v. *Ruppert,* 124 N. Y. 627, (26 N. E. Rep. 313.)

Should we read the description according to courses and distances, but rejecting those mentioned in the last line as erroneous, and bringing this line to the point of beginning, no part of lot four (4) would be brought within the boundaries of the tract of land conveyed by Belland to Baker; and it is this reading and construction which are insisted upon by plaintiffs.

The stakes mentioned in the description as the visible termini of the second and third lines called for could not be found upon the ground. There were no signs of a road in this immediate locality which would answer to that referred to; and it therefore became of vital importance to defendants that with reasonable certainty they should fix the former sites of these stakes, or locate the county road, the center of which was made the easterly boundary line, one of the missing stakes marking each end thereof. There seemed to be no record evidence of the line of this road, and parol testimony was resorted to, not only for the purpose of fixing the site of the road, but for locating the stakes. And on this testimony the trial court found, in effect, the fact to be that the stake at the easterly end of the second line, in the center of the county road, was *south,* instead of *north,* seventy degrees and forty minutes east, (70° 40′ E.,) five and eight one-hundredths (5.08) chains, from the stake at the southerly end of the first described line, over which line and stake there was no dispute; and that defendants' easterly boundary line, being the center line of the county road, run northerly from that point, obliquely across the upper end of lot four, (4,) the prescribed course and distance, to a point indicated by a stake standing when the deed was made, in the center of the county road. Taking this to be the real terminus of defendants' boundary line on the east, a line running westerly on the course and for the distance stated in the deed named

would practically strike the place of beginning. It would inclose a tract of land of about the number of acres called for. By these findings of fact the error in description was squarely placed, located, and thrown into the second course or call; the court holding that it was intended to read in the deeds, and that the proper construction of each deed is, that such course or call should be " thence *south,* seventy degrees and forty minutes east," instead of " thence *north,* seventy degrees," etc. With the construction of the trial court the tract actually contained three and seventy-one one-hundredths (3.71) acres, and with the other construction there would be but two and sixty-five one-hundredths (2.65) acres. In either case the tract is trapeziform, the angles being less acute with the construction adopted by the court than under the other.

The appellants attack these findings of fact as to the location of the county road, and consequently as to the sites of the stakes which marked each end of the easterly boundary line, as unsupported by the evidence; and upon a careful examination of all testimony bearing upon the findings we are of the opinion that the appellants' assignments of error as to this must be sustained.

The sufficiency of the testimony depends wholly upon that given by Henry Belland, a son of the original grantor. It seems that prior to the conveyance to Baker the land in controversy was known as the "Woodbury Tract." In 1855—about one year before the Baker deed was made—it was surveyed out, and Henry, then a boy of 15 years, "went around with the crowd" and saw a stake stuck "down in a hollow north of" what has since been known as "King Street," "about fifty or sixty feet north" thereof "in block 19." This stake would not be far from where the court located the beginning of the fourth, or last, course of the description. From that corner, the witness stated, the surveyor ran southwesterly across what is now block 20,—which is south of 19,—across Mohawk to Baker street, where another stake was stuck. How long these stakes remained the witness does not know, save that in the year 1878 he found a stake in that locality, which he supposed to be the one placed in 1855, at or near what was afterwards called "Baker Street," about where the court located the commencement of defendants' third, or easterly, boundary line.

While it may not be of much consequence, it will be noticed that the witness in his description of this survey reversed the line,—that is, he had the surveyor running his first course *easterly* from the starting-point, instead of *southerly*, as the description of the deed clearly indicates was the manner in which the lines therein mentioned were run, if run at all.

It was not made to appear on the trial what interest a person bearing the name of Woodbury had in the land when the survey was made, or why or for whom it was made. There was no attempt to connect Woodbury with Belland, or with Baker, or the survey with either, or with the Baker deed, executed and delivered one year afterwards. The testimony of the witness as to a county road in that vicinity was still more uncertain and unsatisfactory. There were no signs remaining of a former road, except in front of an old house in the north end of block 19. The witness stated there was a road, "most of the Woodbury tract" being on the north side of it. This was the road as traveled; but it was not straight, at one point "taking a circle around," in the words of the witness. Again, there was a laid-out county road then, of which the witness said: "I knew pretty near, in that locality, where the road was laid officially; but we didn't travel it as the road was located." There was no effort made to fix the site of either of the stakes in the road as laid out, or as traveled, the nearest approach thereto being, on cross-examination, when Belland stated that the stake first set by the surveyor, in what became block 19 on the plat, "was right close to the old county road," which at that point ran around a natural depression in the ground. While the testimony indicates that defendants' claim is correct, we regard it as insufficient to fix and locate with reasonable certainty the stakes or the road on the easterly boundary, so as to throw the apparent error in the description out of the last line, where it would ordinarily be placed, and into the second, or to overcome the apparently certain description by courses and distances explicitly set forth in the deed. For this reason a new trial must be had, and in respect to such new trial it may be said that if the line of the old county road can be established, and the original stakes, or the sites which they formerly occupied, can be established or located with the

certainty before mentioned, then the deeds from the senior Belland and wife to Baker, and from the latter to Lamprey, defendants' predecessor in interest, may be construed in accordance with defendants' contention.

There is nothing in appellants' position that Sache was a *bona fide* purchaser of the whole of lot four (4) for value. In the warranty deed from the original owner, Belland, and his wife, to Mrs. Blum, recorded January 28, 1857, the grantors conveyed "lot number three, (3,) and all their interest in lots numbered four (4) and five (5,) in block numbered twenty, (20,)" etc. The description was peculiar and significant. It was sufficient to put Mrs. Blum and all subsequent purchasers on inquiry, and no one claiming thereunder could acquire a greater interest in lot four (4) than was actually held, according to the record, by Belland when he executed and delivered his said deed.

Judgment reversed.

MITCHELL, J., absent, sick, took no part.

(Opinion published 51 N. W. Rep. 1051.)