## THOMAS H. KLEVEN v. IVER GUNDERSON.[1]

June 23, 1905.

Nos. 14,119—(5).

**Meander Corners.**

Where meander corners of a government survey are lost or obliterated, they are to be restored in accordance with the circular of the United States Land Office of March 14, 1901.

**Inconsistent Calls.**

Calls for the determination of boundary lines which are irreconcilably inconsistent are to be given prevailing effect in the following order, namely: (1) Natural objects; (2) artificial marks; (3) courses and distances.

**Restoration of Corners.**

In this case the lost meander corner was so described by the field notes that it must be located either (1) by following the distance call (without opportunity for testing the chain) and the inferential call for quantity, or (2) by following a call for an existing lake. The meander line as traced from the field notes corresponded substantially with the present shore line of that lake, although the shore line was disputed. *Held*, that the survey following the shores of the lake was the proper one.

Action of ejectment in the district court for Lac qui Parle county. The case was tried before Powers, J., who found in favor of plaintiff. From a judgment entered pursuant to the findings, defendant appealed. Reversed and judgment ordered for defendant.

*H. L. Hayden,* for appellant.

*Young & McElligott,* for respondent.

Meander corners are placed only for the purpose of estimating the number of acres in the fractional lot to be sold and to define the sinuosities of the stream or lake. Railroad Co. v. Schurmeir, 7 Wall. 272; Schurmeier v. St. Paul & Pac. R. Co., 10 Minn. 59 (82); Menasha v. Lawson, 70 Wis. 600.

[1] Reported in 104 N. W. 4.

This meander corner does not bound or limit at all the southeast quarter of the section. The meander corner was not intended to and does not constitute a property corner. It is as to the lost quarter corner and the section line incidental and not a locative call, and as such has no value in locating a lost corner. Niles v. Cedar Point Club, 175 U. S. 300. The location of this meander corner if known on the ground would be material only for the purpose of showing the course of the section line, which would be a straight line from it to the southeast corner of the section. Underwood v. Smith, 109 Wis. 334.

The rule that, where elements in a description cannot be reconciled, monuments will prevail rests on the ground that monuments are less liable to be mistaken than other calls. This is a rule of construction adopted by the courts and when the reason for it fails the rule ceases to have any force. Davis v. Rainsford, 17 Mass. 207; Johnson v. Archibald, 78 Tex. 96; Lamprey v. Mead, 54 Minn. 290, 299; White v. Luning, 93 U. S. 514.

Where the courses and distances of the lines and the area of the tract agree with the calls of the field notes, the call for a natural object which is inconsistent will be rejected as erroneous. Higinbotham v. Stoddard, 72 N. Y. 94, 99.

If the monuments described in the field notes cannot be found on the ground they can only be located by the field notes. In doing so resort must be had to known lines and corners established by the government surveyors. Stadin v. Helin, 76 Minn. 496; Thompson v. Trowe, 82 Minn. 471; Chan v. Brandt, 45 Minn. 93; Beardsley v. Crane, 52 Minn. 537, 544; Ayers v. Watson, 137 U. S. 584; Winans v. Cheney, 55 Cal. 567; Johnson v. Archibald, supra.

JAGGARD, J.

This is an action of ejectment to recover possession of a strip of land along the north line of defendant's and appellant's land, containing about four acres. The plaintiff and respondent is the owner of the northeast ¼ of the southeast ¼ and the defendant the owner of the southeast ¼ of the southeast ¼, all in section 31, township 119, range 42. The boundary line between the lands of the parties depends upon the location of the lost quarter corner on the east line of section 31.

Part of Lac qui Parle lies within the northeast corner of this township. That part of the township is thereby made fractional. It is conceded that the following corners are well known and well marked corners of the United States government survey, to wit, the northwest corner; the southwest corner; the quarter corner on the south side of section 31; that the quarter corner on the west side of the section is midway between the northwest and the southwest corners thereof; that the quarter corner on the east side of the section, the corner in dispute, was established and marked by government surveyors, and that its location is lost; and that the meander corner on the north end of the east section line, if ever marked, is destroyed, and its location lost. It is conceded also that the line between the lands of the plaintiff and defendant is a straight line drawn from a point midway between the southeast corner of the section and the quarter corner on the east side and a point on the west side of the section midway between the southwest corner and the quarter corner on the west side thereof.

The field notes of the government survey of the east line of said section 31 show that it was run by commencing at the southeast corner thereof running north.

> Var. 12 degrees 15 minutes East, 40 [chains] set post in mound with pits for ¼ section corner, 46.30 [chains] intersect Lac qui Parle and set post in mound with pits for meander corner.

These field notes show the whole length of the line to Lac qui Parle to be 46.30 chains, while the actual length thereof according to the defendant's survey is 50.85 chains.

Two surveys were made by the parties to this action; one for the defendant by Woodward, and the other for the plaintiff by Moyer. Moyer re-established the quarter corner at forty chains from the southeast corner of said section and the lost meander corner by the distance and inferential quantity call, and in doing so ignored the call in the field notes "intersect Lac qui Parle," etc. Woodward—a copy of whose survey is here shown—according to his own testimony, measured the length of the line, and found that the distance call "46.30" and the natural object call "intersect Lac qui Parle" did not agree.

MAP OF
SECTIONS 31 AND 32, TOWNSHIP 119 N. OF RANGE 42 W. 5TH P.M.
SURVEY OF JULY 28-30, 1903

There being no indication of there having been a lake shore at the distance call, he then retraced the meander survey of the lake to ascertain if the present shore line thereof is where it was when the government survey was made. Finding it practically the same, and the shore line well defined, he then, ignoring the distance call, proportioned the distance 50.85 chains, and located the quarter corner 43.94 chains and the quarter quarter corner 21.97 chains from the southeast corner. At the first trial the question of adverse possession was in issue. At the second trial the questions as to boundaries were litigated. The court filed findings of fact and conclusions of law and ordered judgment for the plaintiff. From that judgment defendant took this appeal.

The calls of the field notes in this case are irreconcilably inconsistent. None of them are clear and satisfactory. The Moyer survey must be unsatisfactory because it relies on a mere distance call and an inferential call for quantity, and because it ignores the call "intersect Lac qui Parle," inconsistent therewith. The court will take judicial notice of this banal truism that such distance measurements are exceedingly unreliable. To determine the distance it is necessary to "test the chain" (although of steel and of standard length) by remeasurement of the field lines run by the same surveyor to determine the average factor of individual error. This survey is not materially strengthened by the fact that it gives to the southeast quarter of the section the area called for by the government; for quantity is the uncertain result of the calculation by distances, upon which no precise dependence could be reasonably placed.

The Woodward survey, disregarding distance and quantity calls, relies upon the alleged coincidence of the meander survey and the present shore line of Lac qui Parle. The court will also judicially know that meander lines, however important they may be as the rules of the land office set forth, are exceedingly unsatisfactory as the basis for determination of boundaries. "The meander lines run along or near the margin of such waters are run for the purpose of ascertaining the exact quantity of the upland to be charged for, and not for the purpose of limiting the title of the grantee to such meander lines." Hardin v. Jordan, 140 U. S. 371, 380, 11 Sup. Ct. 808; Railroad Co. v. Schurmeir, 7 Wall. 272; 5 Words & Phrases, "Meander Line," 4452; cf. Barnhart v. Ehrhart, 33 Ore. 274, 54 Pac. 195. It is true that in the

survey by Woodward the meander lines as retraced are practically the same as the shore line. The testimony as to what the shore line was at the time of the government survey is positive, but not uncontradicted. Taken in connection with the doubt as to whether the corner, if placed here at all, was on high-water mark or low-water mark or on the bank, that testimony does not clearly determine the true course and lines.

Under such circumstances the decision in this case can be properly reached only by reference to the rules of law applicable to such conflicting and uncertain calls. The rules of the United States Land Office, as embodied in the circular on restoration of lost or obliterated corners and subdivisions of sections of March 14, 1901, are made by statutes of this state the law for locating lost corners. Laws 1903, p. 65, c. 51. One contention of the plaintiff in accordance with Simmons v. Jamieson, 32 Wash. 619, 73 Pac. 700, which seems to have been accepted by the trial court, was this: "These rules provide only one way of relocating lost meander corners, and that is to survey north, south, east, or west, as the case may be, from a known government corner, the course and distance called for in the field notes, after a test of chain, if such test can be made." An examination of the circular itself does not justify this conclusion as applied to the facts involved in this record. Because of its comparative inaccessibility, we quote quite fully from that circular. Subdivision 14, pp. 13 and 14, is, in the part relevant here, as follows:

> Before proceeding with the re-establishment of missing meander corners, the surveyor should have carefully rechained at least three of the section lines between known corners of the township within which the lost corner is to be relocated, in order to establish the proportionate measurements to be used [which was not done in this case]. This requirement of preliminary remeasurement of section lines must in no case be omitted; since it gives the only data upon which the fractional section line can be remeasured proportionately, the corner marking the terminus, or the meander corner, being missing, which it is intended to re-establish * * * on the section or township line retraced in its original location, by the proportionate meas-

urement found by the preceding operations, from the nearest known corner on such township or section line, in accordance with the requirements of the original field notes of survey.

Meander corners hold the peculiar position of denoting a point on line between landowners, without usually being the legal terminus or corner of the lands owned. Leading judicial decisions have affirmed that meander lines are not strictly boundaries, and do not limit the ownership to the exact areas placed on the tracts, but that said title extends to the water, which, by the plat, appears to bound the land.

As such water boundaries are, therefore, subject to change by the encroachment or rescission of the stream or lake, the precise location of old meanders is seldom important, unless in states whose laws prescribe that dried lake beds are the property of the state.

Where the United States has disposed of the fractional lots adjacent to shores, it claims no marginal lands left by rescission or found by reason of erroneous survey. The lines between landowners are therefore regarded as extended beyond the original meander line of the shore, but the preservation or relocation of the meander corner is important, as evidence of the position of the section line.

The fifth general rule reads as follows:

That in a fractional section where no opposite corresponding corner has been or can be established, any required subdivision line of such section must be run from the proper original corner in the boundary line due east and west, or north and south, as the case may be, to the water course, Indian reservation, or other boundary of such section, with due parallelism to section lines.

The circular further reads:

From the foregoing it will be plain that extinct corners of the government surveys must be restored to their original locations, whenever it is possible to do so and hence resort should always be first had to the marks of the survey in the field. The

locus of the missing corner should be first identified on the ground by the aid of the mound, pits, line trees, bearing trees, etc., described in the field notes of the original survey. The identification of mounds, pits, witness trees, or other permanent objects noted in the field notes of survey, affords the best means of relocating the missing corner in its original position. If this cannot be done, clear and convincing testimony of citizens as to the locality it originally occupied should be taken, if such can be obtained. In any event, whether the locus of the corner be fixed by the one means or the other, such locus should always be tested and confirmed by measurements to known corners. No definite rule can be laid down as to what shall be sufficient evidence in such cases, and much must be left to the skill, fidelity and good judgment of the surveyor in the performance of his work.

While it is true, as plaintiff contends, that section 2396 of the Revised Statutes of the United States [U. S. Comp. St. 1901, 1473] provides, inter alia, "the length of such lines returned shall be held and considered as the true length thereof," the land office circular (page 8) recognizes that there are special cases in which this rule is "impossible of fulfilment," and in which a "surveyor is obliged to choose in his own discretion which of two or more lines must yield." Accordingly, the land office circular fully recognizes the necessity in many cases of the exercise of discretion, the unreliability of distance and quantity calls and of meander calls, and the determining character of natural objects.

This view is also fully sustained by the overwhelming weight of judicial decisions upon the relative importance to be given to the respective calls. It is well settled that in ascertaining boundaries or the locality or identity of lands called for in a deed or grant, calls inconsistent with each other are given prevailing effect in the following order, namely: (1) Natural objects; (2) artificial marks; (3) courses and distances. Yanish v. Tarbox, 49 Minn. 268, 51 N. W. 1051; Bolton v. Lann, 16 Tex. 96; City v. Case, 56 Wis. 539, 14 N. W. 599; Allen v. Kersey, 104 Ind. 1, 3 N. E. 557; Sayers v. City, 10 Iowa, 249.

Few legal propositions are so universally accepted as the familiar

one that in determining boundaries natural and permanent objects control courses and distances. Section 12, cols. 401, 402, 8 Cent. Dig., collects ninety cases on this specific point, and scores of others to the same effect. See also Newsom v. Pryor's Lessee, 7 Wheat. 7; Whiteside v. Singleton, 19 Tenn. 207; Brown v. Huger, 21 How. 305, affirming Fed. Cas. No. 2,013; Quicksilver Min. Co. v. Hicks, Fed. Cas. No. 11,508, 4 Saw. 688; More v. Massini, 37 Cal. 432; Shufeldt v. Spaulding, 37 Wis. 662; Mahon v. Richardson, 50 Cal. 333; Cottingham v. Parr, 93 Ill. 233; Hooten v. Comerford, 152 Mass. 591, 26 N. E. 407; Allerton v. Johnson, 3 Sanf. Ch. 72. And see 8 Cent. Dig. § 24, cols. 423, 424. Comparatively little weight is to be given to calls for quantity. 8 Cent. Dig. col. 436, § 29; 8 Cent. Dig. col. 444, § 33; 8 Cent. Dig. col. 452, § 39.

A number of cases resembling, although not based on facts identical with those of, the instant case, tend also to sustain the Woodward survey. Beardsley v. Crane, 52 Minn. 537, 544, 54 N. W. 740; Hrouska v. Janke, 66 Wis. 252, 28 N. W. 166; Martin v. Carlin, 19 Wis. *454; Yanish v. Tarbox, supra; Brown v. Milliman, 119 Mich. 606, 78 N. W. 785; Jones v. Kimble, 19 Wis. 452; Verplank v. Hall, 27 Mich. 79.

Judgment reversed.